## SUPPLEMENTAL DECLARATION OF JOSEPH F. EINIKIS III
### PURSUANT TO 28 U.S.C. § 1746

I, Joseph F. Einikis III, hereby declare as follows:

1.     I am a United States citizen over eighteen years of age.  I am employed as an investigator with the Federal Trade Commission ("FTC" or "Commission"), a position or its equivalent that I have held for over two years.  I am also a Certified Fraud Examiner (CFE), a certification I first obtained in January of 2015 from the Association of Certified Fraud Examiners.  My office address is 55 West Monroe Street, Suite 1825, Chicago, Illinois 60603.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would testify to the same.

2.     As an FTC investigator, my duties have included a number of tasks related to *Federal Trade Commission, et al. v. ALL US MARKETING LLC, f/k/a Payless Solutions, LLC, a Florida corporation, et al.* ("Defendants" or "Receivership Defendants")*,* Case No. 15-cv-01016. I am the same Joseph F. Einikis III who previously signed a declaration in this case on June 17, 2015, filed as Plaintiffs' Exhibit (PX) 1.  Personally identifiable and sensitive financial information has been redacted from the attachments to this supplemental declaration.

3.     On June 24, 2015, FTC staff, representatives from the State of Florida Office of the Attorney General "FOAG", U.S. Postal Inspection Service ("USPIS"), and the Florida Department of Agriculture and Consumer Services ("FDACS") were present when the court-appointed Temporary Receiver, Mark Bernet ("Receiver"), and the Receiver's representatives, took simultaneous possession and control of the Receivership Defendants' business premises ("Immediate Access") located at 8803 Futures Drive, Suite 10 and 5104 N. Orange Blossom Trail, Suite 200 in Orlando, Florida ("Orlando Offices"), pursuant to the Court's *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable

1

Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"), dated

June 22, 2015.  Pursuant to the TRO, after the Receiver secured the business premises, FTC staff

and others were permitted to enter for the purpose of inspecting and copying documents and

records of the Receivership Defendants.  Forensic examiners contracted by FTC also imaged

computers, hard drives, and other media types at the business premises.

4.     I or FOAG staff  mapped the locations by labeling relevant rooms or distinct areas

inside each location  numerically.  Desks, workstations, file cabinets, tables, and other areas

within the rooms were labeled alphabetically.  This labeling method was employed throughout

the Immediate Access at all locations over which the Receiver assumed control in order to

properly identify the provenance of discovered evidence.

## ORLANDO OFFICES

5.     The Receivership Defendants' Orlando offices consist of two suites located inside

different commercial business properties in the Orlando area.  The property at 8803 Futures

Drive, suite 10 ("Futures Drive location") is owned by Homes to Go Realty Inc, an entity

incorporated and directed by Defendant Fariborz Fard ("Fard").  *See* PX 1 ¶58.  The property at

5104 N Orange Blossom Trail Suite 200 ("Orange Blossom location") is the principal business

location of Receivership Defendant Royal Holdings of America LLC ("Royal Holdings") and

Defendant Jonathan Paulino ("Paulino") *See* PX1 ¶14.

### *8803 Futures Drive, Suite 10*

6.      The Receivership Defendants' Futures Drive location occupies one suite inside a

larger commercial office property.  Based on descriptions and photographs taken by FOAG staff,

I understand the suite consists of two floors and several distinct working areas. The first floor

houses what were described as executive offices utilized by Receivership Defendants Global

2

Marketing Enterprises Inc. f/k/a Pay Less Solutions Inc. ("Global Marketing"), Fard, and Defendant Shirin Imani.  The second floor houses what was described as a fully equipped telemarketing room with approximately ten cubicles, each with a functioning computer terminal and telephone.

      7.      Attached hereto as **Einikis Attachment A** are true and correct copies of documents found at the Receivership Defendants' Futures Drive location. The documents include:

    a.   A one year lease agreement between Fard and Receivership Defendant Ovadaa LCC [sic] for a portion of a property located at 1600 33rd Street Suite 114 Orlando FL.

        i.   This agreement was signed on behalf of Ovadaa by Defendant Gary Rodriguez on November 1, 2013.

           1.   1600 33rd Street Suite 114 was identified by Defendant Carmen Williams ("Williams") as a business location on a Global Marketing telemarketing license (TC3647) material change form filed on or about December 7, 2013. See PX 2 ¶19 (Declaration of Mirasasha Velez).

        ii.   An addendum to the contract identifies Ovadaa's address as 474 Eagle Circle, Casselberry FL 32707.

    b.   A one year lease agreement between Homes to Go Realty LLC and "Nest.Egg Technology" for a portion of the Futures Drive location.

        i.   This agreement was signed on behalf of Nest.Egg Technology by Onesto Rivera on December 12, 2014.

3

1. According to the Florida Secretary of State, Division of Corporations website ([www.sunbiz.org](http://www.sunbiz.org)), Onesto Rivera incorporated Nest Egg Technologies LLC on July 8, 2014 and serves as its registered agent.

    ii. Attached to the lease agreement is a copy of Rivera's Florida Driver's license. The address on this license is 474 Eagle Circle Casselberry, Florida.

c. Five paid invoices billed to "Payless Solution Inc." between March 7 and June 13, 2013 for seventy-eight computers and other equipment totaling $5116.62.

d. A blank "Direct Seller Agreement" between Payless Solutions Inc. and a prospective employee which states in part "I understand that I am a direct seller paid on a commission basis. My hours and services are controlled by Payless Solutions Inc."

e. A document titled "Bank List" with a comprehensive listing of over 100 different financial institutions and credit card issuers, their customer service phone numbers, and two columns titled "special notes" and "required" containing information such as each respective card's initial number and which institutions require full or truncated social security numbers to identify the caller.

f. A completed low interest deal sheet dated July 9, 2014  with the word "Rosemont" stamped across the top and several nearly identical blank deal sheets with fields for recording consumers' personal, financial, and credit card information.

4

### *5104 N. Orange Blossom Trail, Suite 200*

8.      The Receivership Defendants' Orange Blossom location occupies one suite inside a larger commercial office property known as the Rosemont building.  *See* PX1 ¶ 54, 62.  The suite contains four distinct spaces, three of which housed telemarketing rooms with approximately fifteen cubicles and approximately five functional computer terminals with telephones.  A fourth room housed an executive office ("Room 2") with two computers, filings cabinets and shelves .

9.      Attached hereto as **Einikis Attachment B** are true and correct copies or photographs of documents and materials found at the Receivership Defendants' Orange Blossom location. These documents include:

  a.  A photograph of the interior of Room 2 with two folders labeled "LI deal sheets" and "DE deal sheets."

  b.   Several photographs of a paymefirstnow fulfillment package found in Room 2 identical the paymefirstnow package described in PX1¶¶ 68 and 69.

    i.  The postage labels affixed to the shipping box indicate the package was mailed from the Orange Blossom location on Februry 14, 2014.

      1.  A letter written by the recipient indicates that the package was returned on or about February 20, 2014 because she "has no need for it." She further indicated the her card was cancelled and requests a refund.

  c.  An invoice and purchase agreement dated February 12, 2014 from AMG/Platinum group to Royal Holdings for 25 "Pay Me First Now – Toolkits"

    i.  The unit price is identified as $102.00.

5

d.  A document titled "CD PITCH CLOSER SCRIPT www.paymefirstnow.com."

   i.  The script states in part "Due to your excellent standings you have been approved for a 0 % interest rate on your accounts for the life of your accounts. The service that we provide for you today is a life long service so you never have to worry about your interest rate going up in the future…Due to your excellent standings on your accounts today there is no out of pocket expense to you for our program. There is a one time enrollment fee of $_____ . Now don't be alarm because the money that you save in interest and finance will completely absorb that fee for you."

e.  A commercial Telephone Seller Registration Certificate found affixed to the wall outside Room 2.

   i.  The certificate is dated April 10, 2013 and identifies Payless Solutions Inc (Global Marketing) of 8803 Futures Drive, Ste. 10 as the licensed commercial telephone seller, registration number TC3647.

f.  A commercial telephone salesperson certificate found affixed to a cubicle for Tonawanda Williams dated July 11, 2014.

   i.  The business under which the salesperson was licensed is identified as Payless Solutions Inc (Global Marketing).

g.  Two documents titled "Outbound Fronted Script" and "Verification Script" offering credit card interest rate reduction services.

   1.  These scripts are virtually identical to those submitted to FDACS by Shirin Imani in April 2011 on behalf of Global Marketing. See PX2 17.

6

h. A representative sample of 20 deal sheets dated between December 7, 2010 and

    June 18, 2015, taken from a larger collection of over 2000 deals sheets found

    distributed throughout the office.

    i. Many of these deals sheets feature the word "Rosemont" printed across

       the top.

    ii. Other sheets stamped "Alex's Room" are identical the deal sheet found on

        Alex Serna's person during his April 2015 arrest by the Orlando police

        department for attempting purchase goods using stolen credit card. This

        information obtained from a consumer who had previously agreed to

        purchase credit card interest rate reduction services from a telemarketer.

        *See* PX1 ¶29.

    iii. Two sheets have "GRR" and "Ovadaa" handwritten across the top.

    iv. Other sheets identify several different call center locations, business

        names, and telemarketing programs including credit card interest rate

        reduction, debt elimination, medical alert devices, and timeshare or

        vacation packages.

        1. Many of the deals sheets contain hand written notes with dates

           from different years indicating that the deal sheets were used as

           customer leads at different times and different locations.

           a. In an April 2015 undercover recording provided by USPIS,

              Defendant Jonathan Paulino explains to CS1823 that for the

              last 10 years he has been recycling old "paper leads

              that…have credit cards…because usually when you have

7

credit cards, you got debt. And you got credit…So between me, Gary and Chris have so much data that we've just been recycling that data…" *See* PX1 ¶42.

i.   Three merchant applications for different payment processors Simple2Pay, Morse & Associates, and MM Merchant Processing.

    i.   The Simple2Pay merchant application was signed by Paulino on January 12, 2015 on behalf of Royal Holdings at the Orange Blossom location.

        1.   Gary Rodriguez is identified as the Royal Holdings' administrative contact.

        2.   Paulino projects monthly processing volumes of $250,000 for mail and telephone order sales with an average ticket price of $2000.

    ii.  The Morse & Associates application was signed by Paulino on January 15, 2015 on behalf of Royal Holdings at the Orange Blossom location.

        1.   The company profile "contact name/relationship" field is identified as "Gary Manager"

    iii. The MM Merchant Processing application was signed by Paulino on January 15, 2015 on behalf of Royal Holdings at the Orange Blossom location.

        1.   Gary Rodriguez is identified as the company contact.

        2.   The good/services sold is described as "educational software."

        3.   Monthly sales volumes are estimated at $500,000 with an average ticket price of $1500.

4.   Paulino indicates that the product is advertised via "telemarketing" and customers place their orders "over the phone."

j.   A representative sample of "debt elimination" scripts found throughout the office affixed to cubicle walls and in inside Room 2.

k.   A representative sample of executed and notarized contracts between customers and "VP Enterprises Group" authorizing VP Enterprises to "confirm, validate and dispute" the client's debts.

l.   A printed email with the subject line "Payout Report Please Review."

i.   The email is from Vanessa Pedraza of VP Enterprises Group LLC and lists client names from the executed and notarized contracts, along with amounts between $1000 and $6789 designated for "Rosemont" or "Big O."

m.   An invoice found on the main desk in Room 2 from BrightHouse Networks for installation of phone and/or internet equipment.

i.   The service address is identified as 1200 W. State Road 434, Ste. 216 in Longwood, Florida.

ii.   The customer name is identified as "Nest Egg Technologies."

iii.   The document was signed by Dimitri Rivera on June 18, 2015.

### LONGWOOD OFFICES

10.   Based in part on the BrightHouse invoice to Nest Egg Technologies for services rendered at 1200 W. State Road 434, Ste. 216, addressed above in  paragraph 9 (m), the Receiver deemed it appropriate to visit the location in order to assess the nature of the relationship between Nest Egg Technologies and the Receivership Defendants.

9

11.     On June 25, 2015 FTC staff, representatives from FOAG, and USPIS, were present when Receiver took possession and control of two business premises located at 1200 W. State Road 434, Ste. 216 and 226 in Longwood, Florida ("Longwood location") pursuant to the TRO. After the Receiver secured the business premises, FTC staff and others were permitted to enter for the purpose of inspecting and copying documents and records.

### *1200 W. State Rd. 434, Suites 216 &226*

12.     The Longwood location consisted of two suites on the second floor of a larger commercial office building. Both were outfitted with a number of cubicles many of which contained functioning computers, and almost all of which contained telephones.  Both offices were occupied by employees and managers at the time of the Immediate Access.

13.     Onesto Rivera was found inside suite 216.  He identified himself as the manager of this location.

14.     Leighton Johnson was found inside suite 226.  He identified himself as the manager of this location.

15.     Attached hereto as **Einikis Attachment C** are true and correct copies of documents found at the Longwood location. These documents include:

    a. A proposed three year lease agreement dated June 2, 2015 between ILC LLC Properties and AR Home Educations, LLC for the premises at suite 226.

        i. The proposal was addressed to Gary Rodriguez via email using the address mayheminnovations1@gmail.com.

        ii. A "release form," "personal financial statement," and "business tax application" were filled out and signed by Angel Rodriguez on behalf of "AR Home Educations, LLC."

1.  According to the Florida Secretary of State, Division of Corporations website (www.sunbiz.org), Angel Rodriguez incorporated AR Homeeducations LLC on January 22, 2015 and serves as its registered agent.

b.  An invoice billed to "GRR Financial" from Kittinger Business Machines paid on June 16, 2015. The service problem is described as "moved copier…to 1200 WEST STATE ROAD 434."

    i.  GRR Financial's billing address is identified as 1200 West State Road 434, Suite 226, "Attn: CHRISTIAN"

    ii. The copier was shipped to GRR Financial Services, LLC at suite 226, "Attn: LEIGHTON."

c.  A BrightHouse Networks order submitted by Leighton Johnson on June 4, 2015.

    i.  The business name and service address is identified as AR Home Education at 1200 W State Road 434, Suite 226.

d.  An "operating agreement" between "Thacker & Associates" and AR Home Educations LLC dated May 8, 2015.

    i.  This agreement is signed by Gary Rodriguez.

e.  An outgoing mail parcel containing executed and notarized agreements between several consumers and Thacker & Associates for "unsecured debt cancellation."

f.  Photographs and copies of debt elimination scripts found throughout the location.

    i.  Other scripts observed affixed to cubicle walls were identical to those found at the Orange Blossom location.

11

g.  Four untitled documents summarizing client information including the amount of the consumer's unsecured debt along with sensitive personal and financial information.

    i.  The "lead source" on these documents is identified as "Royal Hodlings [sic]" and "Mayhem Innovations."

h.  A representative sample of deal sheets among thousands found distributed throughout the Longwood location.

    1.  Many of these deal sheets were found inside a folder labeled "old leads scanned & emailed."

    2.  Some of these deals sheets contain the word "Rosemont" printed at the top.

    3.  Other deal sheets are identical to those found at the Orange Blossom and Futures Drive locations. *See* Einikis Attachment A and B.

    4.  Other deal sheets observed at the Longwood location referenced several different office locations, business names, and telemarketing programs including credit card interest rate reduction, debt elimination, medical alert devices, and timeshare or vacation packages.

    5.  Many of the deals sheets contain hand written notes with dates from different years indicating that the deal sheets were used as customer leads at different times and different locations.

i.  A photograph of an employee cubicle covered in dozens of different deal sheets.

12

I declare under penalty of perjury that the foregoing statement is true and correct.


Executed on ___July 2___, 2015.

Joseph F. Einikis III

13

## LEASE AGREEMENT

**THIS AGREEMENT** made and entered into this 10-09-2013 at Orlando, Florida
between Fariborz Fard (Sub lessor), and OVADAA  LCC
 with EIN # ███████1269  with address _190 Lyman rd .Casselberry Florida 32707
(Sub lessee).

### WITNESSED:

### PREMISES:

1.  Sub lessor, in consideration of the payment to it by Sub lessee of the rents herein
    contained, which Sub lessee agrees to promptly pay and in consideration of the
    performance be Sub lessee of the covenants hereinafter provides, which Sub lessee
    agrees to fully and promptly perform, does hereby lease to Tenant: PORTION of
    the property located at 1600 33RD Street Suite 114 Orlando FL 32839 consisting on
    forty five stations and five managers desks (hereinafter the "Premises").

### TERM:

2. The term of this lease shall be for a period of **One Year Lease** beginning upon
completion the execution of this contract. This period together with any renewal term
hereinafter provides shall be referred to as the "Lease Term Also  sub lessor can
terminate this lease term  in  writing with 30 days  notice to sub lessee .".

### BASE RENT, ADDITIONAL RENT

3.  (A) As base rent for the use and occupancy of the leased Premises, Sub lessee shall
    pay to Sub lessor in lawful money order of The United States of America the sum
    of
    US$3,600.00 per month.

    (B)Any rent not paid in full by the 05th of the month shall include a late fee of
    $200.00 dollars. Should any Sub lessee check be dishonored, the Sub lessee shall
    automatically pay to the Sub lessor a $35.00 service fee, and all rent shall thereafter
    be paid by cashier's check or money order.

    (C)  If the Sub lessor for any reason cannot deliver possession of the PREMISES to
    the Sub lessee at the commencement of the Lease Term, this lease shall not be void or
    avoidable nor shall the Sub lessor be liable to the Sub lessee for any loss or damage
    resulting there from, but there shall be an abatement of rent for the period between the
    commencement of the Lease Term and the time when Sub lessor does deliver
    possession.

Intials:  6R

1

(D) Sub lessee has deposited with Sub lessor simultaneously with Sub lessee's execution of this lease, the amount of **US $ 3,600.00**, the receipt of which is hereby acknowledged by Sub lessor as security for the full performance by the Sub lessee of the terms, conditions and covenants of this lease to be performed and kept as well as for the cost of any repair or collection of damages in excess of normal wear and tear. Said security deposit shall be returned following the expiration of this lease after the Sub lessee has vacated and left the premises in an acceptable condition (following inspection by Sub lessor and/or Landlord) and surrendered all keys. If the Sub lessor determines that any loss, damage, or injury chargeable to the Sub lessee hereunder exceeds the Security Deposit, the Sub lessor may apply the sum against the actual loss, damage or injury and the balance thereof will be the responsibility of the Sub lessee. It is further understood and agreed that the Security Deposit is not to be considered the last rental payment under this lease.

(E) If Sub lessor applies any part of the deposit to cure any Sub lessee default, Sub lessees hall upon demand deposit with Sub lessor the amount applied so that Sub lessor shall have the full deposit on hand at all times during the term of this lease. Unless otherwise required by law, Sub lessor shall not be obligated to segregate Sub lessee's security deposit but may commingle the said deposit with its other funds, nor shall Sub lessor be required to maintain the said deposit in an interest bearing account.

(F) Rent shall be mailed or delivered by Sub lessee to Sub lessor at 8803 Futures Dr. Suite 10A Orlando FL 32819 or at such other place as Sub lessor may from time to time  designated in writing. Rent shall be received by Sub lessor on the first day of each and every month during the Lease Term without prior demand therefore.
(G) Provided Sub lessee is not in default under this lease at the time of exercise or at any time after exercise and before commencement of the renewal term, and provided Sub lessee is then in compliance with all its obligations under this lease.


## CONSTRUCTION & IMPROVEMENT:

4. All the construction and Alteration should be done by Sub lessee. Including permits plans, impact fees, ECT, and Unit is been Rented "AS IS" where is.

## UTILITIES:

5. Sub lessee is responsible for the Electricity Internet and ½ of water bill of its portion. Sub lessee shall promptly pay for Electricity telephone, internet and cable and ½ water charges of the PREMISES during the Lease Term.

## INSURANCE

8. ( A ) The exterior of the building of witch the Premises form a pat are insured against loss by fire or casualty with coverage provided by the Condominium Association.

Intials:  6 ⅂

2

FTC-PLS-S2-000829(

**Einikis Attachment A
Page 2 of 44**

Sublessee shall not occupy or uses the Premises in any matter that increases hazard insurance premium.

(B) Sublessee shall, at its sole expense, secure and maintain throughout the term of this lease, all risk coverage at replacement value, with respect to any and all furnishings, fixtures, equipment, and other Sublessee improvements located or hereafter located on the Premises, with Sublessor named as an additional insured or loss payee. Evidence of such insurance and each renewal thereof, shall promptly be furnished to Landlord.

(C) Sublessee hall furnish Sublessor with a certificate of insurance issued by an insurer licensed to do business in the state of Florida, evidencing issuance of a general commercial liability policy providing coverage of at least $ 1,000.000 per occurrence ($ 500,000 bodily injury per person), $ 900,000 in property damage, and aggregate coverage of $ 2,000,000. Such policy shall be purchased at Sublessee's sole expense and show Landlord and the Association as additional named insured. The said certificate for the first lease year shall be delivered to Sublessor on or before the possession date, and for each renewal year thereafter. No such policy shall be canceled by the insurer without at least 30 days written notice to Sublessor and Landlord.

( D) In the event Sublessee fails to procure or maintain any insurance coverage required by this lease to be maintained by Sublessee or fails to furnish evidence thereof to Landlord, then Sublessor may, upon ten days' prior notice to Sublessee, procure such coverage at Sublessee's expense, the cost of witch shall be payable on demand by Sublessee as additional rent.

## USE OF PREMISES

9. ( A )  Sublessee shall use and occupy the Premises in strict accordance with all applicable Federal, state, county and Municipal zoning, use, and other legal requirements, including without limitation, the ORANGE COUNTY CODE, and Condominium Association requirements. Sublessee shall comply with all rules; witch may be hereafter adopted by Sublessor for the protection, welfare, and orderly management of the building and its Sublessee's or occupants. The Premises shall not be used or occupied for any unlawful purpose or in any manner constituting a nuisance. Sublessee accepts possession of the Premises in an "as is". Compliance with any and all applicable zoning, use, and similar requirements shall be Sublessee's sole responsibility.

## CARE OF PREMISES

10. Sublessee shall, throughout the lease term, take good care of the Premises and fixtures, appurtenances, doors and windows, and mechanical equipment servicing the premises, excepting that witch may be covered by applicable warranty, and, at its sole cost and expense, make all non-structural repairs thereto and perform maintenance thereon as and when needed to preserve them in good working order and condition, reasonable wear and tear from use and damage from elements, fire or other casualty excepted. Notwithstanding the foregoing, al damages or injury to the premises or to any

Intials:  6 P                                                               3

FTC-PLS-S2-0008291

**Einikis Attachment A
Page 3 of 44**

PX 21, Page 16

other part structural or non-structural repairs, caused by or resulting from carelessness, omission, neglect or improper conduct of Sublessee, its servants, employees, invitees or licensees, shall be repaired by the Sublessee at its sole expense to the satisfaction of Sublessor reasonably exercised. Sublessee shall also repair all damage to the building and the premises caused by the moving of Sublessee's fixtures, furniture or equipment.

## BANKRUPTCY

11. If the Sublessee shall become insolvent or if bankruptcy proceedings shall begun by or against Sublessee during the lease Term, Sublessor is hereby irrevocably authorized, at landlord's option, to forthwith cancel this Lease, as for Default, or Sublessor may elect to accept lease payments and other payments due hereunder from any receiver, trustee or court appointed custodian of the tenant's business or property, without affecting Sublessor's rights as contained in this Lease, but no receiver, trustee, custodian or other judicially appointed officer or person shall have any right, title or interest in or to the Premises by virtue of this Lease nor to any of Sublessee's equipment, furniture and fixtures located on the Premises witch said property shall secure payment by Sublessee of all amounts due under this Lease to Sublessor.

## HOLDING OVER

12. If the Sublessee continues to occupy the Premises after the termination of the lease with Landlord's permission, then the lease reverts to month-to-month lease.

## SIGNS

13. Sublessee shall not install or locate signs in the windows and doors of the Premises or any other part of the building or grounds without first securing written consent from the Condominium Association. Any signs installed by Sublessee with landlord's or Association permission shall be maintained in good repair and when removed any building or grounds damage there from restored at Sublessee's expense, Background copy and logo shall be approved by the Association.

## QUIET ENJOYMENT

14. Sublessee, upon paying the rents and keeping and performing the covenants of this lease to be performed by Sublessee, shall peacefully and quietly hold, occupy and enjoy the Premises during the Lease Term without any hindrance or molestation by Sublessor or any persons lawfully claiming under Landlord.

## ASSIGNMENT AND SUBLETTING

15. Sublessee may assign this lease or sublet all or any part of the Leased Premises only with Sublessor and Landlord's advance written consent. The Sublessor shall not unreasonably withhold consent. Sublessor and/or Landlord may assign this lease at any time.

Intials: 6R _____

4

## FIRE AND OTHER CASUALTY

16. In the event the Premises shall be destroyed or so damaged or injured by fire or other casualty during the Lease Term, whereby the same shall be rendered un-tenantable, then Sublessor shall have the right to render the Premises tenantable by repairs within sixty (60) days there from and this lease shall not terminate. If the Premises are not rendered tenantable within said time it shall be optional with either party hereto to cancel this lease, and in the event of such cancellation, the rent shall be paid only to the date of such fire or casualty. The cancellation herein mentioned shall be evidenced in writing. During any time that the Premises are un-tenantable due to causes set forth in this Paragraph, the rent or a just and fair proportion thereof shall abate.

## EMINENT DOMAIN

_17. If the whole of the Premises shall be taken by any public authority under the power of eminent domain, or if so much of the building or grounds shall be taken by any such authority under the power of eminent domain so that the Sublessee cannot to operate its taken by such public authority and the rent shall be paid up to that day with proportionate refund by Sublessor of any such rant as may have been paid in advance or deposited as security. The amount awarded for any taking under the power of eminent domain shall belong to and be the sole property of the Sublessor whether such amount is awarded as compensation for diminution in value to the leasehold or to the fee of the Premises or as damage to the residue.

## WAIVER

18. No waiver by Sublessor of any of the covenants and agreements herein contained or any breach thereof shall be taken to constitute a waiver of any other subsequent breach of such covenants and agreements or to justify or authorize the non-observance at any time of the same or of any other covenants and agreements hereof.

## NOTICES

19. All notices required under this lease to be given to Sublessee may be given to it at the Premises. Any such notice to be given to Sublessor under this lease shall be given at **8803 Futures Dr. Suite 10A Orlando FL. 32819** or at such other place as Sublessor and/or Landlord may designate in writing. All notices shall be in writing and shall be sent by certified mail, postage prepaid, facsimile or by personal delivery.

## SUBORDINATION

20. This lease is subject and subordinate to all mortgages which may now or hereafter affect the Leased Premises or the building of which it forms a part, and to all renewals, modifications, consolidations, replacements, and extensions thereof. This clause shall be self-operative and no further instrument e of subordination shall be required by any mortgagee. In confirmation of such subordination, Sublessee shall execute promptly any

Intials: _G R_ _____

5

subordination certificate that Sublessor and/or Landlord may request. This lease shall also be subordinate to the Declaration of Condominium, as from time to time modified or amended, and to such other restrictions of record as may be imposed upon the Premises.

## FIXTURES AND ALTERATIONS

21. Sublessee shall not, Without Sublessor and/or Landlord's prior written consent, attach any fixtures in or to the Premises or change, alter or make additions to the Premises, nor attach of affix any article hereto, nor permit any annoying sound device, overload nay floor, or deface the Premises. Al improvements made by Sublessee to the Premises which are so attached to the Premises that they cannot be removed without material injury to the Premises, shall become the property of Landlord, upon installation. Any other attached fixtures or any alterations, additions or improvements made or attached by Sublessee upon the Premises shall on the expiration or termination of this lease, if requested by Landlord, be promptly removed at Sublessee's expense and the Premises restored by Sublessee at its expense to its original condition, ordinary wear and tear expected. Any such a fixture, alteration, addition, and /or improvement not requested to be removed shall remain on the Premises and shall become and remain the property of Landlord. Transfer of ownership to Landlord of all Sublessee fixtures, installations and personal property not removed from the Premises upon expiration or termination, shall be conclusively presumed to have been authorized by Sublessee, and title thereto shall pass to Landlord under this lease as by a Bill of Sale.

## CONSTRUCTION LIENS

22. (A) Sublessee shall have no power or authority to subject the Premises or any interest therein or portion thereof to any mechanics, construction, or other liens. Sublessee shall promptly pay all contractors, subcontractors, material men, laborers, architects, engineers, and other professionals, so as to prevent any liens from attaching to the leased premises ( or Sublessee's interest in the leased Premises) or the estate of Landlord. If any lien is made or filed against the Premises (or Sublessee's interest in the Premises), or any part thereof, or the estate of Landlord, arising out of any labor or material furnished or alleged to have been furnished to, for or an behalf or Sublessee, Sublessee shall, at Tenant's sole cost and expense , discharge or transfer such lien to a lien transfer bond or other security in accordance with Section 713.24 of the Florida Statutes within thirty (30) days after written request by Landlord. If such lien is not discharged or transferred within such thirty (30) day period, Landlord may at any time thereafter, at its opinion, discharge such lien, without inquiry as to the validity of such lien or the true amount, if any, owed in connection therewith, and any cost and expenses (including attorney's fees) incurred by Landlord in connection therewith shall be paid by Sublessee to Landlord within five (5) days of receipt by Sublessee of an invoice therefore from the Landlord.

(B) Notice is hereby given that neither Landlord nor the Premises shall be liable for any labor, services, or materials furnished to Sublessee and that no construction, mechanics or other lien for any such labor, services, or materials shall attach to encumber, or in any way affect the interest of Landlord in and to the Premises. Sublessee shall, from time to

Intials: 6 R_____                                    6

**Einikis Attachment A
Page 6 of 44**

time upon request of Sublessor and/or Landlord execute acknowledge deliver to Landlord as short form of lease in recordable form confirming that the term of this Lease expressly provide that the interest of Landlord in the Premises shall not be subject to liens for improvements made by Sublessee and such other information as may be required by Chapter 713 of Florida Statues, to prevent the interest of Landlord in the Premises from being subject to liens for improvements made by Tenant. The short form of lease shall be in a form acceptable to Landlord.

(C) Sublessee agrees fully to indemnity and hold Landlord harmless for all cost including reasonable attorney's fees, which are required to be expended by Landlord to satisfy, cure, bond-off, or settle any such claims so created by Sublessee.

## REDELIVERY OF PREMISES

23. Sublessee shall on the expiration or termination of this lease, deliver up the Premises in as good order and condition as it now is or may be put by Sublessor, reasonable use and ordinary wear and tear thereof, and Sublessee shall promptly surrender all keys to the Leased Premises to Sublessor and/or Landlord.

## INDEMNIFICATION

24. Sublessee shall pay all loss or damage occasioned by growing out of the use and occupancy of the Premises by Sublessee its agents, employees, guest, customers, and invitees, and Sublessee will indemnify, protect, and save Sublessor and/or Landlord harmless from and against any loss or liability including without limitation Sublessor and/or Landlord's litigation costs, including reasonable attorney's fees.

## OTHER PROVISIONS

25. (A) In the event of litigation between Sublessor and Sublessee the prevailing party therein shall be entitled to recover the expenses of such proceeding, including reasonable attorney's fees, whether incurred at trial or appellate levels.

   (B) Sublessor shall have the right at any time without liability to Sublessee to make at Landlord's expense, repairs, alterations, additions, and improvements, structural or otherwise in or to the Premises, the building or any part thereof, and to perform any acts related to the safety, protection and preservation thereof , and during such operations to take into and through the Premises or any part of the building all material and equipment other facilities, provided that Sublessor shall cause as little inconvenience or annoyance to Sublessee as is reasonably necessary in the circumstances, and shall work during ordinary business hours and Sublessee shall pay Sublessor for overtime and other expenses incurred if such work is done during other hours at Sublessee's request.

   (C) All approval required of and between Sublessor and Sublessee under the provisions of this Agreement shall not be unreasonably withheld.

Intials:  C R

7

FTC-PLS-S2-0008295

(D) Time is of the essence in the performance of each and every covenant of this lease.

## RIGHT AND REMEDIES RESERVED BY SUBLESSOR

26. (A) All rights and remedies of Sublessor herein enumerated shall be cumulative and none shall exclude any other right or remedy allowed by law.

   (B) If Sublessee defaults in the payment of any rent, including additional rent, when due and payable, and fails to cure such default within five (5) days of notice, or in the performance or observance of any other provision of this lease and such other default shall continue for thirty (30) days after notice thereof shall have been given to Sublessee or if the leasehold interest of Sublessee be levied upon under execution or attached by process of law; or if Sublessee abandons the Premises or ceases active business operations for a period of more than five days; then and in any such event Sublessor, if it so elects forthwith, or any time thereafter while such default continues may terminate this Lease. In the event of termination, Sublessor may pursue as damages the rent from the unexpired portion of the Lease less amount received from relenting the Premises as described in paragraph (C) below.

   (C) In any case where Sublessor recovered possession of the Premises by reason of Sublessee's default, Sublessor may at Sublessor option occupy the Premises or cause the Premises to be redecorated, altered, divided, consolidated with other adjoining Premises, or otherwise changed or prepared for relenting, and may relent the Premises or any part of the Premises as agent of Sublessee or otherwise, for a term or terms to expire prior to, at the same time as, or subsequent t the original expiration date of this lease, at Sublessor's option, and receive the rent for such relenting. Rent so received shall be applied first to the payment of such expenses as Sublessor may have incurred in connection with the recovery of possession, redecorating, altering, dividing, and consolidating with other adjoining Premises, or otherwise changing or preparing for relenting, and the relenting including brokerage and reasonable attorney's fees and then to the payment of damages in amounts equal to the rent under this agreement and to the cost and expenses of performance of the other covenants of Sublessee as provided herein. Sublessee agrees, in any such case whether or not Sublessor has relent to pay to Sublessor damages equal to the rent and other sums agreed to be paid by Sublessee, less the net proceeds of the relenting if any and the damages shall be payable by Sublessee on the several rent days above specified. In relenting the Premises Sublessor may grant rent concessions, Sublessee shall not be credited with such concessions. No such relenting shall constitute a surrender and acceptance or be deemed evidence of a surrender and acceptance. If Sublessor elects pursuant to this agreement actually to occupy and use the Premises or any part of the Premises during any part of the balance of the term as originally fixed or since extended, there shall be allowed against lessee's obligation for rent or damages as defined here, during the period of Sublessor's occupancy, the reasonable value of such occupancy, not to exceed in any event the rent reserved and

Intials: _____

8

such occupancy shall not be construed as a relief of Sublessee's liability under this agreement.

(D) Sublessee by this agreement waives all right of redemption to which Sublessee or any person claiming under Sublessee might be entitle by any law now or which may later be in force. Sublessee's remedies under this agreement are in addition to any remedy allowed by law.

(E) Upon any termination of this lease, whether by lapse of time or otherwise; or upon any termination of the Sublessee's right to possession without termination of the Lease; the Sublessee shall surrender possession and vacate the Premises immediately and deliver possession thereof to the Landlord.

## LANDLORD'S LIEN

27. In addition to the statutory Landlord's lien, Sublessor and/ or Landlord shall have at all times a valid security interest to secure payment of all rental and other sums of money becoming due hereunder from Sublessee and to secure payment of any damages or loss which Sublessor and/ or Landlord may suffer by reason of the breach by Sublessee of any covenant, agreement or condition contain herein, upon all goods, wares, equipment, fixtures, furniture, improvements and other personal property of Sublessee presently, or which may hereafter be, situated in the Premises, and all proceeds there from and such property shall not be removed there from without the consent of Sublessor and/ or Landlord until all arrearages in rent as well as any and all other sums of money then due to Sublessor and/ or Landlord hereunder shall first have been paid and discharged and all the covenants, agreements and conditions hereof have been fully complied with and performed by Sublessee *Landlord's security interest in Tenant's motor vehicle inventory shall be subordinated to the lien imposed as a part of Tenant's floor plan financing.* Upon the occurrence of default by Sublessee, Sublessor and/ or Landlord may in addition to any other remedies provided herein by law, enter upon the Premises and take possession of any and all goods, wares, equipment, fixtures, furniture, improvements and other personal property of Sublessee situated in the Premises, without liability for trespass or conversion and sell the same at public or private sale in compliance with the applicable Uniform Commercial Code with or without having such property at the sale after giving Sublessee reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale Sublessor and/ or Landlord may purchase unless otherwise prohibited by law. Unless otherwise prohibited by law, and without intending to exclude any other manner of giving Sublessee reasonable notice, the requirement of reasonable notice shall be met if such notice is given in the manner prescribed in this Lease given as therein provided at least ten (10) days before the time of sale. Any sale made pursuant to the provision of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held in the Premises or where the property is located after the time pale and method of sale and a general description of the property to be sold have been advertised in the newspaper prescribed for advertisement of public sales at least once each week for two weeks before the date of sale. The proceeds fro, any such deposition less any and all expenses connected with the

Intials: 6R

9

taking of possession, holding and selling of the property ( including reasonable attorney's fees and expenses), shall be applied as a credit against the indebtedness secured by the security interest granted in this paragraph. Any surplus shall be paid to Sublessee or as otherwise required by law; Sublessee shall pay any deficiencies forthwith. Upon request by Sublessor and/ or Landlord, Sublessee agrees to execute and deliver to Sublessor and/ or Landlord a financing statement in form sufficient to perfect the security interest of Sublessor and/ or Landlord in the aforementioned property and proceeds thereof under the provision of the applicable Uniform Commercial Code in force. The statutory lien for rent is not hereby waived the security interest herein granted being in addition and supplementary thereto.

## RULES AND REGULATIONS

28. Sublessee its employees, agents, and invitees will perform and abide by the rules and regulations established by the condominium association and any reasonable amendments or additions to say rules and regulations as Sublessor and/or Landlord may from time to time make.

## WAIVER OF JURY TRIAL

29. To the extent that waiver of jury trial is permitted by law, the parties waive trial by jury in any action or proceeding brought in connection with this lease or the Premises.

## SECTION HEADINGS

30. The section heading in this lease are intended for convenience only and shall not be taken into consideration in any construction or interpretation of this lease or any of its provisions.

## BINDING EFFECT

31. The provision of this lease shall apply to bind, and insure to the benefit of the Landlord, Sublessor, Sublessee and their respective heirs, successors, legal representative, and assigns. It is understood that the term "Landlord" as used in this lease means only the owner, a mortgagee in possession, or a term master Sublessee of the building, so that in event of any sale of the building or of any lease of the building, or if a mortgagee shall take possession of the premises, the Sublessor and/ or Landlord named here shall be entirely freed and relieved of all covenants and obligations subsequently accruing under this agreement. It shall be deemed without further agreement that the purchaser or the mortgagee in possession has assumed and agreed to carry out any and all covenants and obligations of the Sublessor and/ or Landlord under this agreement.

Intials: G R _____

10

FTC-PLS-S2-0008298

**Einikis Attachment A
Page 10 of 44**

PX 21, Page 23

GUARANTOR

Mrs CARMEN WILLIAMS. _____ with S.S. # _____ and
_____ identified with S.S. # _____ and phone _____ are
Guarantors of this Lease Agreement

_____        _____
                             Date
_____
Name

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF
NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF A COMPETENT
ATTORNEY PRIOR TO SIGNING. THIS AGREEMENT MAY ALSO HAVE
TAX CONSEQUENCES AND YOU ARE ADVISED TO CONSULT AN
APPROPRIATE PROFESSIONAL FOR SUCH SPECIALIZED ADVICE.**

IN WITNESS WHEREOF, this lease is signed and delivered, this _____ day
of _____, 20____ at Orlando, Florida.

Sublessor: Fariborz Fard
8803 Futures Dr. Suite #10 A
Orlando FL, 32819

In the presence of:

_____

By: _____
    Fariborz Fard

Tenant:

In the presence of:

_____

By: _____

_____

Intials: _____

11

By: _____

## ADDENDUM TO CONTRACT

**THIS IS AN ADDENDUM TO THE CONTRACT** made and entered into this 10-09- 2013 at Orlando, Florida, between Fariborz Fard (Sublessor), anOct -09-2013., with EIN # ████ 1269 with address 474 Eagle circle Casselberry, FL 32707(Sublessee).

The Sublessee and Sublessor make the following terms and conditions to be part of the Contract:

- Term of Lease starts on _OCT- 09-2013 a period of One Year.
- Sublessor has to have a copy of the office key, the alarm code, and access to the premises.
- The First month rent(October)  is prorated to $2520..00 The total amount pay at the execution of this contract is $6,120.00
- Deposit money of $3,600.00 would be pay at the execution of this contract.
- All deposits are held by Sublessor not in the bank and it is not interest Bering. DEPOSIT IS NOT THE LAST MONTH RENT.
- Internet expenses are Sublessee responsibility. Internet account is currently under Sub lessor name but it is Sublessee responsibility to make the changes within 30 days  payments at beginning of each month.
- All parties have access to common areas and they are responsible to maintain it clean.
- All utilities electricity, internet phone  , and one half of the water usage  is sole responsibility of sub lessee
- All applicable permits or licenses related to the business or construction are sole Sublessee responsibility.
- This is a Sub-contract and it is subject under the Master Contract Terms with the owner of the property.
- All the equipment listed in the Attachment "A" must remain in the premises all the time and is Sublessee responsibility to maintain it in good conditions. Sublessee is responsible for any equipment's damage or lost
- Attached exhibit A is list of equipment is in subleases position and should be returned to sub lessor in working condition any equipment broken lost or damaged or missing it is sub lessee's  responsibility and it has to be given back to sub lessor with in writing . .

Sublessor _____ Date: _____
　　　　　　　Signature

Name: _____

Sublessee: _____ Date: 11/1/13
　　　　　　　Signature

Intials: 6T_____

12

FTC-PLS-S2-000830(

**Einikis Attachment A
Page 12 of 44**

Name: _____

Sublessee: _____   Date: _____
            Signature

Name: _____

Intials: _____

13

FTC-PLS-S2-0008301

# ATTACHMENT A

| | | | |
|---|---|---|---|
| Dell computer opti pla x 745 | 6 | | |
| Dell computer opti pla x620 | 28 | | |
| Dell computer opti pla x520 | 8 | | |
| Dell computer opti pla x280 | 6 | | |
| Total of | 48 | average price $ 120.00 | |

Flat screen monitors verity        55 pc average price $ 30.00

Dell server 2950                                            $800.00

| | | | |
|---|---|---|---|
| 2 1850Dell server | $500.00 each | total | $1000.00 |
| Snack machine | | | $1500.00 |
| 53Heman miller office chairs | | | $75.00 each |
| Dcp 740 brother copier | | | $120.00 |
| Dell laser printer | | | $250.00 |
| 50 inch Visio TV | | | $ 1000.00 |
| 5 switches | | total | $300.00 |
| Cisco rotter | | | $ 75.00 |
| 4 drawer file cabinet | | | $250.00 |
| Microwave oven | | | $50.00 |

All equipment received by MR> CAMEN WILLIAMS

Oct 10- 2013        _____

            signture

Intials: _____ _____                                        13

FTC-PLS-S2-0008304

## LEASE AGREEMENT

**THIS AGREEMENT** made and entered into this Dec/24/ 2014 at Orlando, Florida between Homes To Go realty LLC(Landlord), and NEST.EGG TECHNOLGY  EIN # ▮▮▮▮4710  3644 WITH ADDRESS 574 CALIBRE CREST PKWY CASEL BERRY FL. 32707 (Tenant)

**WITNESSED:**

PREMISES:

*1.* Landlord, in consideration of the payment to it by Tenant of the rents herein contained, which Tenant agrees to promptly pay and in consideration of the performance be Tenant of the covenants hereinafter provides, which Tenant agrees to fully and promptly perform, does hereby lease to Tenant: PORTION of the property located at 8803 FUTURES DR.UNIT #10A ORLANDO FL. 32819 ROOM #202 AND 203

*2.* TERM:

2. The term of this lease shall be for a period of **One full year** beginning upon completion of the improvements as shown in attachment "A" .This period together with any renewal term hereinafter provides shall be referred to as the "Lease Term".

BASE RENT, ADDITIONAL RENT

3. (A) As base rent for the use and occupancy of the leased Premises, Tenant shall pay to Landlord in lawful money order of The United States of America the sum of US$1,700.00 per month.

(B)Any rent not paid in full by the 05th of the month shall include a late fee of $250.00 dollars. Should any Tenant check be dishonored, the Tenant shall automatically pay to the Land lord a $25.00 service fee, and all rent shall thereafter be paid by cashier's check or money order.

(C)  If the Landlord for any reason cannot deliver possession of the PREMISES to the Tenant at the commencement of the Lease Term, this lease shall not be void or avoidable nor shall the Landlord be liable to the Tenant for any loss or damage resulting there from, but there shall be an abatement of rent for the period between the commencement of the Lease Term and the time when Landlord does deliver possession.

Intials: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

1

FTC-PLS-S2-0009942

**Einikis Attachment A
Page 15 of 44**

PX 21, Page 28

(D) Tenant has deposited with landlord simultaneously with Tenant's execution of this lease, the amount of US $ 1,700.00, the receipt of which is hereby acknowledged by Landlord as security for the full performance by the Tenant of the terms, conditions and covenants of this lease to be performed and kept as well as for the cost of any repair or collection of damages in excess of normal wear and tear. Said security deposit shall be returned following the expiration of this lease after the Tenant has vacated and left the premises in an acceptable condition (following inspection by Landlord) and surrendered all keys. If the determines that any loss, damage, or injury chargeable to the Tenant hereunder exceeds the Security Deposit, the Landlord may apply the sum against the actual loss, damage or injury and the balance thereof will be the responsibility of the Tenant. It is further understood and agreed that the Security Deposit is not to be considered the last rental payment under this lease.

(E) If Landlord applies any part of the deposit to cure any Tenant default, Tenant Shall upon demand deposit with the amount applied so that Landlord shall have the full deposit on hand at all times during the term of this lease. Unless otherwise required by law, Landlord shall not be obligated to segregate Tenant's security deposit but may commingle the said deposit with its other funds, nor shall be required to maintain the said deposit in an interest bearing account.

(F) Rent shall be mailed or delivered by Tenant to Landlord at 8803 Futures Dr. Suite 10A Orlando FL 32819 or at such other place as Landlord may from time to time designated in writing. Rent shall be received by Landlord on the first day of   each and every month during the Lease Term without prior demand therefore.

(G) Provided Tenant is not in default under this lease at the time of exercise or at any time after exercise and before commencement of the renewal term, and provided Tenant is then in compliance with all its obligations under this lease. Tenant Shall have the option to renew this lease for an additional term of 12 months. Tenant shall give written notice to landlord of its exercise of this option to renew than tree months before expiration of the initial term of this lease.

(H) Right of First Refusal. Provided Tenant is not in default at the time of exercise and is then in compliance with all its obligations under this lease, Landlord agree to give right of first refusal to Tenant for purchase the Premises during the Lease Term. Tenant shall answer Landlord's offer within fifteen (15) business days after Tenant's receipt of written notice thereof. If Tenant responds negatively to the offer or fails to respond within the prescribed period, such right of first refusal shall be deemed canceled and voided and Tenant shall thereafter have no further right or interest in the purchase of the Premises. If Tenant responds positively to Landlord's notice and elects to purchase the Premises, Tenant Shall deliver a loan commitment letter from its lender within sixty (60) days after notice is received, and shall have the period of ninety days from receipt of Landlord's notice to close the transaction. The terms of sale shall otherwise be as set forth by Landlord's aforesaid written notice.

Intials: _____

2

FTC-PLS-S2-0009943

CONSTRUCTION & IMPROVEMENT:

4. All the construction and Alteration should be done by the Tenant. Including permits plans, impact fees, ECT, and Unit is been Rented "AS IS" where is.

5. Tenant is responsible for the Electricity bill of its portion(50%). Tenant shall promptly pay for telephone, internet and cable of the PREMISES during the Lease Term. Landlord pays for water bill

TAXES AND ASSESSMENTS:

6. Tenant shall pay to Landlord during the Lease Term as additional rent the real property taxes and assessments imposed on the Premises, payable at the initial rate of US Included per month. Such payment shall be paid to Landlord in equal monthly installments on the first day of each month, together with Tenant's base rent. If by reason of an increase in the tax rate, an increase in assessed valuation, the levying of additional assessments, or for any other reason, real estate taxes and assessments coming due during the Lease Term exceed the amount payable at the commencement of this lease, then such additional amount shall be paid by Tenant to Landlord in a lump sum within thirty (30) days following receipt of invoice from the Landlord. All personal property taxes charged or levied against Tenant's furniture, fixtures and equipment in the Leased Premises shall be paid by Tenant.

CONDOMINIUM ASSOCIATION:

7. The Premises are subject to a condominium regime administered by the Association of Alafaya Business Center ., a Florida not-for-profit corporation ("Condominium Association" or Association"). A monthly fee is charged by the Association for the purposes including common area maintenance and building insurance (CAM). The CMA fee in reference to the Promises, in the present monthly amount of $157.77 shall be paid by Tenant to Landlord as additional rent, in advance, during the Lease Term, together with Tenant's base rent. Increases in the Association fee and any special assessments imposed by the Association shall be paid by Tenant in like manner or otherwise within the time prescribed by the Association.

INSURANCE

Intials: _____

3

INSURANCE

8. ( A ) The exterior of the building of witch the Premises form a pat are insured against loss by fire or casualty with coverage provided by the Condominium Association. Tenant shall not occupy or uses the Premises in any matter that increases hazard insurance premium.

(B) Tenant shall, at its sole expense, secure and maintain throughout the term of this lease, all risk coverage at replacement value, with respect to any and all furnishings, fixtures, equipment, and other Tenant improvements located or hereafter located on the Premises, with Landlord named as an additional insured or loss payee. Evidence of such insurance and each renewal thereof, shall promptly be furnished to Landlord.

(C) Tenant shall furnish Landlord with a certificate of insurance issued by an insurer licensed to do business in the state of Florida, evidencing issuance of a general commercial liability policy providing coverage of at least $ 1,000.000 per occurrence ($ 500,000 bodily injury per person), $ 900,000 in property damage, and aggregate coverage of $ 2,000,000. Such policy shall be purchased at Tenant's sole expense and show Landlord and the Association as additional named insured. The said certificate for the first lease year shall be delivered to Landlord on or before the possession date, and for each renewal year thereafter. No such policy shall be canceled by the insurer without at least 30 days written notice to Landlord.

( D) In the event Tenant fails to procure or maintain any insurance coverage required by this lease to be maintained by Tenant or fails to furnish evidence thereof to Landlord, then Landlord may, upon ten days' prior notice to Tenant , procure such coverage at Tenant's expense, the cost of witch shall be payable on demand by Tenant as additional rent.

USE OF PREMISES

9. ( A ) Tenant shall use and occupy the Premises in strict accordance with all applicable Federal, state, county and Municipal zoning, use, and other legal requirements, including without limitation, the ORANGE COUNTY CODE, and Condominium Association requirements. Tenant shall comply with all rules; witch may be hereafter adopted by Landlord for the protection, welfare, and orderly management of the building and its

Tenant's or Tenant occupants.  The Premises shall not be used or occupied for any unlawful purpose or in any manner constituting a nuisance. Tenant accepts possession of the Premises in an "as is".  Compliance with any and all applicable zoning, use, and similar requirements shall be Tenant's sole responsibility

CARE OF PREMISES

Intials: _____                                      4

10. Tenant shall, throughout the lease term, take good care of the Premises and fixtures, appurtenances, doors and windows, and mechanical equipment servicing the premises, excepting that witch may be covered by applicable warranty, and, at its sole cost and expense, make all non-structural repairs thereto and perform maintenance thereon as and when needed to preserve them in good working order and condition, reasonable wear and tear from use and damage from elements, fire or other casualty excepted. Notwithstanding the foregoing, al damages or injury to the premises or to any other part structural or non-structural repairs, caused by or resulting from carelessness, omission, neglect or improper conduct of Tenant, its servants, employees, invitees or licensees, shall be repaired by the Tenant at its sole expense to the satisfaction of Landlord reasonably exercised Tenant. shall also repair all damage to the building and the premises caused by the moving of Tenants fixtures, furniture or equipment.

(A) All the equipment that assigned for Tenant use is in working and good condition ,If any repair needed it is sole responsibilities of the Tenant to repair and put it back in original condition

## BANKRUPTCY

11. If the Tenant shall become insolvent or if bankruptcy proceedings shall began by or against Tenant during the lease Term, Landlord is hereby irrevocably authorized, at landlord's option, to forthwith cancel this Lease, as for Default, or Landlord may elect to accept lease payments and other payments due hereunder from any receiver, trustee or court appointed custodian of the tenant's business or property, without affecting Landlord's rights as contained in this Lease, but no receiver, trustee, custodian or other judicially appointed officer or person shall have any right, title or interest in or to the Premises by virtue of this Lease nor to any of Tenant's equipment, furniture and fixtures located on the Premises witch said property shall secure payment by Tenant of all amounts due under this Lease to Landlord.

## HOLDING OVER

12. If the Tenant continues to occupy the Premises after the termination of the lease with Landlord's permission, then the lease reverts to month-to-month lease.

## SIGNS

13. Tenant shall not install or locate signs in the windows and doors of the Premises or any other part of the building or grounds without first securing written consent from the Condominium Association. Any signs installed by Tenant with landlord's or Association permission shall be maintained in good repair and when removed any building or grounds damage there from restored at Tenants expense. Background copy and logo shall be approved by the Association.

## QUIET ENJOYMENT

Intials: _____

5

FTC-PI S-S2-0009946

14.   Tenant, upon paying the rents and keeping and performing the covenants of this lease to be performed by Tenant shall peacefully and quietly hold, occupy and enjoy the Premises during the Lease Term without any hindrance or molestation by Landlord or any persons lawfully claiming under Landlord.

## ASSIGNMENT AND SUBLETTING

15.   Tenant may assign this lease or sublet all or any part of the Leased Premises only with Landlord's advance written consent. The Landlord shall not unreasonably withhold consent. Landlord may assign this lease at any time.

## FIRE AND OTHER CASUALTY

16. In the event the Premises shall be destroyed or so damaged or injured by fire or other casualty during the Lease Term, whereby the same shall be rendered un-tenantable, then Landlord shall have the right to render the Premises tenantable by repairs within sixty (60) days there from and this lease shall not terminate. If the Premises are not rendered tenantable within said time it shall be optional with either party hereto to cancel this lease, and in the event of such cancellation, the rent shall be paid only to the date of such fire or casualty. The cancellation herein mentioned shall be evidenced in writing. During any time that the Premises are un-tenantable due to causes set forth in this Paragraph, the rent or a just and fair proportion thereof shall abate.

## EMINENT DOMAIN

17. If the whole of the Premises shall be taken by any public authority under the power of eminent domain, or if so much of the building or grounds shall be taken by any such authority under the power of eminent domain so that the Tenant cannot to operate its taken by such public authority and the rent shall be paid up to that day with proportionate refund by Landlord of any such rant as may have been paid in advance or deposited as security. The amount awarded for any taking under the power of eminent domain shall belong to and be the sole property of the Landlord whether such amount is awarded as compensation for diminution in value to the leasehold or to the fee of the Premises or as damage to the residue.

## WAIVER

18. No waiver by Landlord of any of the covenants and agreements herein contained or any breach thereof shall be taken to constitute a waiver of any other subsequent breach of such covenants and agreements or to justify or authorize the non-observance at any time of the same or of any other covenants and agreements hereof.

## NOTICES

19. All notices required under this lease to be given to Tenant may be given to it at the Premises. Any such notice to be given to Landlord  under this lease shall be given at

Intials:  _____

6

FTC-PLS-S2-0009947

8803 Futures Dr. Suite 10A Orlando FL. 32819 or at such other place as Landlord may designate in writing. All notices shall be in writing and shall be sent by certified mail, postage prepaid, facsimile or by personal delivery.

## SUBORDINATION

20. This lease is subject and subordinate to all mortgages which may now or hereafter affect the Leased Premises or the building of which it forms a part, and to all renewals, modifications, consolidations, replacements, and extensions thereof. This clause shall be self-operative and no further instrument e of subordination shall be required by any mortgagee. In confirmation of such subordination, Tenant shall execute promptly any subordination certificate that Landlord may request. This lease shall also be subordinate to the Declaration of Condominium, as from time to time modified or amended, and to such other restrictions of record as may be imposed upon the Premises.

## FIXTURES AND ALTERATIONS

21.  Tenant shall not, Without Landlord's prior written consent, attach any fixtures in or to the Premises or change, alter or make additions to the Premises, nor attach of affix any article hereto, nor permit any annoying sound device, overload nay floor, or deface the Premises. Al improvements made by  Tenant to the Premises which are so attached to the Premises that they cannot be removed without material injury to the Premises, shall become the property of Landlord, upon installation. Any other attached fixtures or any alterations, additions or improvements made or attached by Tenant upon the Premises shall on the expiration or termination of this lease, if requested by Landlord, be promptly removed at Tenant's expense and the Premises restored by Tenant at its expense to its original condition, ordinary wear and tear expected. Any such a fixture, alteration, addition, and /or improvement not requested to be removed shall remain on the Premises and shall become and remain the property of Landlord. Transfer of ownership to Landlord of all Tenant fixtures, installations and personal property not removed from the Premises upon expiration or termination, shall be conclusively presumed to have been authorized by  Tenant and title thereto shall pass to Landlord under this lease as by a Bill of Sale.

## CONSTRUCTION LIENS

22. (A)  Tenant shall have no power or authority to subject the Premises or any interest therein or portion thereof to any mechanics, construction, or other liens.    Tenant shall promptly pay all contractors, subcontractors, material men, laborers, architects, engineers, and other professionals, so as to prevent any liens from attaching to the leased premises ( or Tenant 's interest in the leased Premises) or the estate of Landlord. If any lien is made or filed against the Premises (or Tenant's interest in the Premises), or any part thereof, or the estate of  Landlord, arising out of any labor or material furnished or alleged to have been furnished to, for or an behalf or  Tenant , Tenant shall, at Tenant's sole cost and expense , discharge or transfer such lien to a lien transfer bond or other security in accordance with Section 713.24 of the Florida Statutes within thirty (30) days

Intials;                                                                                            7

after written request by Landlord. If such lien is not discharged or transferred within such thirty (30) day period, Landlord may at any time thereafter, at its opinion, discharge such lien, without inquiry as to the validity of such lien or the true amount, if any, owed in connection therewith, and any cost and expenses (including attorney's fees) incurred by Landlord in connection therewith shall be paid by  Tenant to Landlord within five (5) days of receipt by Tenant of an invoice therefore from the Landlord.

(B) Notice is hereby given that neither Landlord nor the Premises shall be liable for any labor, services, or materials furnished to Tenant and that no construction, mechanics or other lien for any such labor, services, or materials shall attach to encumber, or in any way affect the interest of Landlord in and to the Premises.   Tenant shall, from time to time upon request of  Landlord execute acknowledge deliver to Landlord as short form of lease in recordable form confirming that the term of this Lease expressly provide that the interest of Landlord in the Premises shall not be subject to liens for improvements made by Tenant and such other information as may be required by Chapter 713 of Florida Statues, to prevent the interest of Landlord in the Premises from being subject to liens for improvements made by Tenant. The short form of lease shall be in a form acceptable to Landlord.

(C)   Tenant agrees fully to indemnity and hold Landlord harmless for all cost including reasonable attorney's fees, which are required to be expended by Landlord to satisfy, cure, bond-off, or settle any such claims so created by Tenant.

REDELIVERY OF PREMISES

23.   Tenant shall on the expiration or termination of this lease, deliver up the Premises in as good order and condition as it now is or may be put by Landlord , reasonable use and ordinary wear and tear thereof, and    Tenant shall promptly surrender all keys to the Leased Premises to Landlord.

INDEMNIFICATION

24.   Tenant shall pay all loss or damage occasioned by growing out of the use and occupancy of the Premises by Tenant  its agents, employees, guest, customers, and invitees, and   Tenant will indemnify, protect, and save Landlord harmless from and against any loss or liability including without limitation Landlord's litigation costs, including reasonable attorney's fees.

OTHER PROVISIONS

25. (A) In the event of litigation between Landlord and Tenant  the prevailing party therein shall be entitled to recover the expenses of such proceeding, including reasonable attorney's fees, whether incurred at trial or appellate levels.

   (B) Landlord shall have the right at any time without liability to Tenant  to make at Landlord's expense, repairs, alterations, additions, and improvements, structural or otherwise in or to the Premises, the building or any part thereof, and to perform any acts

Intials: _____                                                      8

**Einikis Attachment A
Page 22 of 44**

related to the safety, protection and preservation thereof, and during such operations to take into and through the Premises or any part of the building all material and equipment other facilities, provided that Landlord shall cause as little inconvenience or annoyance to Tenant as is reasonably necessary in the circumstances, and shall work during ordinary business hours and  Tenant shall pay Landlord for overtime and other expenses incurred if such work is done during other hours at Tenant 's request.

(C) All approval required of and between Landlord and Tenant under the provisions of this Agreement shall not be unreasonably withheld.

(D) Time is of the essence in the performance of each and every covenant of this lease.


RIGHT AND REMEDIES RESERVED BY SUBLESSOR

26. (A) All rights and remedies of Landlord herein enumerated shall be cumulative and none shall exclude any other right or remedy allowed by law.

(B) If  Tenant defaults in the payment of any rent, including additional rent, when due and payable, and fails to cure such default within five (5) days of notice, or in the performance or observance of any other provision of this lease and such other default shall continue for thirty (30) days after notice thereof shall have been given to  Tenant  or if the leasehold interest of Tenant be levied upon under execution or attached by process of law; or if  Tenant  abandons the Premises or ceases active business operations for a period of more than five days; then and in  any such event Landlord, if it so elects forthwith, or any time thereafter while such default continues may terminate this Lease. In the event of termination, Landlord may pursue as damages the rent from the unexpired portion of the Lease less amount received from relenting the Premises as described in paragraph (C) below.

(C) In any case where Landlord recovered possession of the Premises by reason of Tenant's default, Landlord may at Landlord option occupy the Premises or cause the Premises to be redecorated, altered, divided, consolidated with other adjoining Premises, or otherwise changed or prepared for relenting, and may relent the Premises or any part of the Premises as agent of Tenant  or otherwise, for a term or terms to expire prior to, at the same time as, or subsequent t the original expiration date of this lease, at Landlord 's option, and receive the rent for such relenting. Rent so received shall be applied first to the payment of such expenses as Landlord may have incurred in connection with the recovery of possession, redecorating, altering, dividing, and consolidating with other adjoining Premises, or otherwise changing or preparing for relenting, and the relenting including brokerage and reasonable attorney's fees and then to the payment of damages in amounts equal to the rent under this agreement and to the cost and expenses of performance of the other covenants of Tenant as provided herein.    Tenant  agrees, in any such case whether or not Landlord has relent to pay to Landlord  damages equal to

Intials: _____                                                                    9

**Einikis Attachment A
Page 23 of 44**

PX 21, Page 36

the rent and other sums agreed to be paid by Tenant, less the net proceeds of the relenting if any and the damages shall be payable by   Tenant on the several rent days above specified. In relenting the Premises Landlord may grant rent concessions,  Tenant shall not be credited with such concessions. No such relenting shall constitute a surrender and acceptance or be deemed evidence of a surrender and acceptance. If Landlord elects pursuant to this agreement actually to occupy and use the Premises or any part of the Premises during any part of the balance of the term as originally fixed or since extended, there shall be allowed against lessee's obligation for rent or damages as defined here, during the period of Landlord's occupancy, the reasonable value of such occupancy, not to exceed in any event the rent reserved and such occupancy shall not be construed as a relief of Tenant 's liability under this agreement.

(D)   Tenant by this agreement waives all right of redemption to which Tenant  or any person claiming under  Tenant might be entitle by any law now or which may later be in force. Tenant's remedies under this agreement are in addition to any remedy allowed by law.

(E) Upon any termination of this lease, whether by lapse of time or otherwise; or upon any termination of the Tenant's right to possession without termination of the Lease; the
Tenant shall surrender possession and vacate the Premises immediately and deliver possession thereof to the Landlord.

## LANDLORD'S LIEN

27. In addition to the statutory Landlord's lien, Landlord shall have at all times a valid security interest to secure payment of all rental and other sums of money becoming due hereunder from   Tenant  and to secure payment of any damages or loss which Landlord may suffer by reason of the breach by Tenant  of any covenant, agreement or condition contain herein, upon all goods, wares, equipment, fixtures, furniture, improvements and other personal property of Tenant  presently, or which may hereafter be, situated in the Premises, and all proceeds there from and such property shall not be removed there from without the consent of ·Landlord until all arrearages in rent as well as any and all other sums of money then due to Landlord hereunder shall first have been paid and discharged and all the covenants, agreements and conditions hereof have been fully complied with and performed by     Tenant  *Landlord's security interest in Tenant's motor vehicle inventory shall be subordinated to the lien imposed as a part of Tenant's floor plan financing.* Upon the occurrence of default by    Tenant , Landlord may in addition to any other remedies provided herein by law, enter upon the Premises and take possession of any and all goods, wares, equipment, fixtures, furniture, improvements and other personal property of Tenant  situated in the Premises, without liability for trespass or conversion and sell the same at public or private sale in compliance with the applicable Uniform Commercial Code with or without having such property at the sale after giving   Tenant reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale Landlord may purchase unless otherwise prohibited by law. Unless otherwise prohibited by law, and without intending to exclude any other manner of giving Tenant reasonable notice, the requirement of reasonable

Intials: _____

10

**Einikis Attachment A
Page 24 of 44**

PX 21, Page 37

notice shall be met if such notice is given in the manner prescribed in this Lease given as therein provided at least ten (10) days before the time of sale. Any sale made pursuant to the provision of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held in the Premises or where the property is located after the time pale and method of sale and a general description of the property to be sold have been advertised in the newspaper prescribed for advertisement of public sales at least once each week for two weeks before the date of sale. The proceeds fro, any such deposition less any and all expenses connected with the taking of possession, holding and selling of the property ( including reasonable attorney's fees and expenses), shall be applied as a credit against the indebtedness secured by the security interest granted in this paragraph. Any surplus shall be paid to    Tenant or as otherwise required by law;

Tenant shall pay any deficiencies forthwith. Upon request by Landlord,    Tenant agrees to execute and deliver to Landlord a financing statement in form sufficient to perfect the security interest of Landlord in the aforementioned property and proceeds thereof under the provision of the applicable Uniform Commercial Code in force. The statutory lien for rent is not hereby waived the security interest herein granted being in addition and supplementary thereto.

## RULES AND REGULATIONS

28.    Tenant  its employees, agents, and invitees will perform and abide by the rules and regulations established by the condominium association and any reasonable amendments or additions to say rules and regulations as Landlord may from time to time make.

## WAIVER OF JURY TRIAL

29. To the extent that waiver of jury trial is permitted by law, the parties waive trial by jury in any action or proceeding brought in connection with this lease or the Premises.

## SECTION HEADINGS

30. The section heading in this lease are intended for convenience only and shall not be taken into consideration in any construction or interpretation of this lease or any of its provisions.

## BINDING EFFECT

31. The provision of this lease shall apply to bind, and insure to the benefit of the Landlord,  Tenant  and their respective heirs, successors, legal representative, and assigns. It is understood that the term "Landlord" as used in this lease means only the owner, a mortgagee in possession, or a term master Tenant of the building, so that in event of any sale of the building or of any lease of the building, or if a mortgagee shall take possession of the premises, the Landlord named here shall be entirely freed and relieved of all covenants and obligations subsequently accruing under this agreement. It shall be deemed without further agreement that the purchaser or the mortgagee in

Intials:  _____

11

FTC-PI S-S2-0009952

**Einikis Attachment A
Page 25 of 44**

PX 21, Page 38

possession has assumed and agreed to carry out any and all covenants and obligations of the Landlord under this agreement.


## RULES AND REGULATIONS

The following Rules and Regulations shall remain in force and effect until Occupant is notified in writing, by Board, of any chances and amendments.

1. All loading and unloading of goods shall be done only in the area and through the entrances, designated for such purposes by Board.

2. The delivery or shipping of merchandise, supplies and fixtures to and from the leased premises shall be subject to such rules and regulations as in the judgment of Board are necessary for the proper operation of the BUILDING.

3. All garbage and refuse shall be kept in the container specifies by Board and shall be placed outside of the premises prepared for collection in the manner and at the time and paces specified by Board. Occupant shall pay the cost of the removal of any of Occupant's refuse or rubbish.

4. Any unit owner determined by the Association to be using a dumpster or other waste container, provided for the benefit of the unit owner in excess of his proportionate share may at the discretion of the Board of the Association, be required to utilize Ms own dumpster or otherwise dispose of his trash.

5. No sign, structure or object shall be erected on, the roof or exterior wars of the PREMISES, or on the grounds, without, in each instance, the written consent of Board. Any sign, structure or object so installed without such written consent shall be subject to removal without notice at any time.

6. Occupant shall not place or permit any junk, obstructions or merchandise in the outside areas immediately adjoining the PREMISES. Occupant shall not otherwise use the common areas for storage or disposal purposes of any type of personal property.

7. The plumbing facilities shall not be used for any other purpose than that for which they are constructed, and no foreign substance of any kind shall be thrown therein or any violation of Rule 7 of DERM, and the expense of any breakage, stoppage or damage resulting from a violation of this provision shall be borne by Occupant, who shall, or whose employees, agent or invitees shall have caused it.

8. Occupant shall use, at occupant's cost, such pest extermination as Board may approve and at such time as is obviously necessary. rescission, amendment, alteration, or waiver of any

Intials: _____                                        12

FTC-PLS-S2-0009953

rule or regulation in favor of one tenant shall operate as an alteration or waiver in favor of any other tenant. Board shall not be responsible to any occupant for the non-observance or violation by any occupant of any of these rules and regulations at any time.

11.   Excess use of water, sewerage, garbage and refuse over limits by Board shall be borne by occupant.

12.   In the event the Board determines that security, extermination, maintenance, cleaning or other services should be contracted by association in the best interest of all occupants then all occupants shall share in said service.

13.   To maintain the premises to preclude additional expense, higher insurance rates and loss to others, the following businesses are not permitted.

1. Auto Body Repairing and Painting

2. Auto Parts (used)

3. Auto Wrecking

4. Bedding Manufacturers

5. Bottled Gas Sales & Services

6. Cabinet Makers

7. Chemical Works

8. Demolition Contractors

9. Distillers

10.   Fiber Glass

11.   Furniture Manufacturers

12.   Furniture Repairing

13.   Gas-Liquefied Petroleum

14.   Junk Dealers

15.   Lumber Dealers

16.   Nightclubs

Intials: _____

13

FTC-PLS-S2-0009954

**Einikis Attachment A
Page 27 of 44**

PX 21, Page 40

17.   Oil & Gas Industry Operation

18.   Packaging Materials Manufacturing

19.   Paint Manufacturers

20.   Paper Box Manufacturers

21.   Any type of Paper Manufacturers

22.   Scrap Dealers

23.   Tire Recapping

24.   Toy Manufacturers

25.   Upholsterers

26.   Any type of Woodworking Shops

27.   Fish Dealers

28.   Animal Dealers

29.   Crematories

ADDENDUM TO CONTRACT

THIS AGREEMENT made and entered into this January, 2014, at Orlando, Florida between SHIRINIMANI (Landlord), and David S. Bradley with S.S █████████ and Cresta Pillsbury DBA Global Marketing Strategies LLC address Of 298 24th street #470 Ogden , UT. 84401 (Tenant).

9. Occupant shall not burn any trash or garbage of any kind in or about the leases PREMISES.

10.   The Board reserves the right to rescind, amend, alter, or waive any of the foregoing rules or regulations at any time when, in its judgment, it deems necessary, desirable or proper for its best interest and for the best interest of the occupants and no such

Intials:   _____   14

GUARANTOR

Mr. ONESTO LUIS RIVERA with S.S. # ~~█████~~ and HOMES TO GO
REALTY _____ identified with S.S. # ___N/A___ and phone ' _____ are
Guarantors of this Lease Agreement                                    321-

_____  ___12-24-14___
Name                              Date

_____  _____
Name                              Date

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF
NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF A COMPETENT
ATTORNEY PRIOR TO SIGNING. THIS AGREEMENT MAY ALSO HAVE
TAX CONSEQUENCES AND YOU ARE ADVISED TO CONSULT AN
APPROPRIATE PROFESSIONAL FOR SUCH SPECIALIZED ADVICE.**

IN WITNESS WHEREOF, this lease is signed and delivered, this 24 day of
DEC., 2014 at Orlando, Florida.
            HOMES TO GO REALTY
            8803 Futures Dr. Suite #10 A
            Orlando FL, 32819

    In the presence of:

    _____
                              By: _____

    _____

        Tenant:


    in the presence of:

    _____
                              By: _____

    _____

                              By: _____


                    Intials: _____   15

FTC-PLS-S2-0009956

## ADDENDUM TO CONTRACT

**THIS IS AN ADDENDUM TO THE CONTRACT** made and entered into this ___DEC /24, 2014 at Orlando, Florida, between HOMES TO GO REALTY  (lessor), and _____NES.EGG TECHNOLY., with EIN ▇▇▇▇▇4710 with address 574  CALIBRE CREST PKWYCASSELBERRY FLORIDA  32707(lessee).

The   Tenant  and lessor make the following terms and conditions to be part of the Contract:

- Term of Lease starts on  DEC 24 2014a period of One Year.
- lessor has to have a copy of the office key, the alarm code, and access to the premises.
- The First month rentTO BE  $1,700.00. The total amount pay at the execution of this contract is $3,400
- Deposit money of $1,700.00 would be pay at the execution of this contract.
- All deposits are held by lessor . DEPOSIT IS NOT THE LAST MONTH RENT.
- Internet expenses are  Tenant responsibility. Internet account is under lessor name but it is lessee responsibility to make the payments at beginning of each month. lessee will made a $220.00 for the internet service at the execution of the contract.
- All parties have access to common areas and they are responsible to maintain it clean.
- All applicable permits or licenses related to the business or construction are sole lessee responsibility.
- **This lease can be terminated by both parties with in 60 days notice in writing first of each month**
- All the equipment listed in the Attachment "A" must remain in the premises all the time and is lessee responsibility to maintain it in good conditions. lessee is responsible for any equipment's damage or lost.

lessor _____ Date: 12-24-14
        Signature

Name: _____

lessee: _____ Date: _____
        Signature

Name: _____

lessee: _____ Date: _____

Intials: _____                16

# ATTACHMENT A

16 Dell computer opti pla x 745 with monitor key board and mouse
Average price each                                    $ 250.00
One Dell  color printer                               $ 300.00

signiture

Intials: _____                    17

FTC-PLS-S2-0009958



Room   202 - 203

Nesh. egg  Technolgy LLC

EIN #  ██████  4710

574   calibre  cent   PKwy

1 year  lease  60 DAY  Notice

950 + 750 = 1700   Deposit
                    1700  Rent

CASH EXPENSE P.S. CHASE



**southeastern**data

111 Highline Drive
Longwood, FL 32750

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/13/2013 | 304339 |

| Bill To | Ship To |
|---------|---------|
| PayLess Solution INC. | PAID |

| P.O. Number | Contact | Terms | Salesperson | Ship Date | Ship Via | F.O.B. |
|-------------|---------|-------|-------------|-----------|----------|--------|
| | | cash | DR | 6/13/2013 | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 10 | COMPUTER | COMPUTER Dell 755 2gb 40gb HD | 68.00 | 680.00T |
| 2 | COMPUTER | COMPUTER Dell optiplex 790 | 300.00 | 600.00T |
| 2 | MISCELLANE... | MISCELLANEOUS Netgear 16 Port FSs16 | 10.00 | 20.00T |
| 1 | MISCELLANE... | MISCELLANEOUS Cisco Systems Catalyst 2950 | 20.00 | 20.00T |
| 4 | MISCELLANE... | MISCELLANEOUS Cisco Systems Catalyst 2950 | 5.00 | 20.00T |
| 1 | MISCELLANE... | MISCELLANEOUS 4 monitor Stand | 80.00 | 80.00T |
| | | Sales Tax-6% | 6.00% | 85.20 |

| | Total | $1,505.20 |
|---|-------|-----------|

Unless otherwise noted, all items sold as is.
Unless specified, all computers sold without operating systems.
We offer onsite shredding of hard drives, tapes and similar data media!

Your Resale Certificate #:

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 800-810-0432 | 321-972-3911 | website@southeasterndata.com | http://www.southeasterndata.com |

  

**southeastern**data
142 Park Road
Oviedo, FL  32765

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/28/2013 | 304209 |

| Bill To | Ship To |
|---------|---------|
| PayLess Solution INC. | |

| P.O. Number | Contact | Terms | Salesperson | Ship Date | Ship Via | F.O.B. |
|-------------|---------|-------|-------------|-----------|----------|--------|
| | | cash | DR | 3/28/2013 | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
| 15 | COMPUTER | COMPUTER DELL Optiplex Gx520 2gb Ram/80gb HD/ with LCD | 60.00 | 900.00T |
| | | Sales Tax-6% | 6.00% | 54.00 |

| | Total |
|--|-------|
| | $954.00 |

Unless otherwise noted, all items sold as is.  All sales final - no returns or exchanges.  Unless specified, all computers sold without operating systems.

Your Resale Certificate #:

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 407-971-4654 | 407-971-0167 | sales@southeasterndata.com | http://www.southeasterndata.com |

FTC-PLS-S2-0001208

# Invoice

**southeastern**data

142 Park Road
Oviedo, FL 32765

| Date | Invoice # |
|------|-----------|
| 3/7/2013 | 304177 |

PAID

| Bill To | Ship To |
|---------|---------|
| PayLess Solution INC. | |

| P.O. Number | Contact | Terms | Salesperson | Ship Date | Ship Via | F.O.B. |
|-------------|---------|-------|-------------|-----------|----------|--------|
| | | cash | DR | 3/7/2013 | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 9 | COMPUTER | COMPUTER Dell Optiplex 745 | 68.00 | 612.00T |
| 1 | COMPUTER | COMPUTER Dell USFF GX 620 | 45.00 | 45.00T |
| | | Sales Tax-6% | 6.00% | 39.42 |

| | **Total** | | | $696.42 |
|--|-----------|--|--|---------|

Unless otherwise noted, all items sold as is.  All sales final - no returns or exchanges.  Unless specified, all computers sold without operating systems.

Your Resale Certificate #:

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 407-971-4654 | 407-971-0167 | sales@southeasterndata.com | http://www.southeasterndata.com |

FTC-PLS-S2-0001212

# Invoice

**southeastern**data

142 Park Road
Oviedo, FL 32765

| Date | Invoice # |
|------|-----------|
| 3/13/2013 | 304190 |

PAID

| Bill To | Ship To |
|---------|---------|
| PayLess Solution INC. | |

| P.O. Number | Contact | Terms | Salesperson | Ship Date | Ship Via | F.O.B. |
|-------------|---------|-------|-------------|-----------|----------|--------|
| | | cash | DR | 3/13/2013 | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 15 | COMPUTER | COMPUTER Dell USFF Optiplex GX 280/260/270 | 45.00 | 675.00T |
| | | Sales Tax-6% | 6.00% | 40.50 |

| | Total | $715.50 |
|--|-------|---------|

Unless otherwise noted, all items sold as is. All sales final - no returns or exchanges. Unless specified, all computers sold without operating systems.

Your Resale Certificate #.

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 407-971-4654 | 407-971-0167 | sales@southeasterndata.com | http://www.southeasterndata.com |

FTC-PLS-S2-0001214



**southeastern**data
111 Highline Drive
Longwood, FL 32750



# Invoice

| Date | Invoice # |
|------|-----------|
| 6/13/2013 | 304341 |

| Bill To | Ship To |
|---------|---------|
| PayLess Solution INC. | |

| P.O. Number | Contact | Terms | Salesperson | Ship Date | Ship Via | F.O.B. |
|-------------|---------|-------|-------------|-----------|----------|--------|
| | | cash | DR | 6/13/2013 | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 25 | COMPUTER | COMPUTER Dell Optiplex 520/620 | 45.00 | 1,125.00T |
| 1 | COMPUTER | COMPUTER Dell Poweredge T310 ( returned a Dell optiplex 790 ) pay remaining bal | 50.00 | 50.00T |
| | | Sales Tax-6% | 6.00% | 70.50 |

| | Total | $1,245.50 |
|---|-------|-----------|

Unless otherwise noted, all items sold as is.
Unless specified, all computers sold without operating systems.
We offer onsite shredding of hard drives, tapes and similar data media!

Your Resale Certificate #:

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 800-810-0432 | 321-972-3911 | website@southeasterndata.com | http://www.southeasterndata.com |

FTC-PLS-S2-0001217

### Direct Seller Agreement

I understand that I am a direct seller paid on a commission basis. My hours and services are controlled by *Payless Solutions Inc.* I understand that I am responsible for my taxes and worker's compensation insurance and will not enter into contracts either verbal or written on behalf of *Payless Solutions Inc.* I further understand that as a direct seller for *Payless Solutions Inc.*, upon discontinuance of services at this location, my final check shall be the equivalent to the hours spent in the office, for the minimum required by federal law. All remaining commissions shall be withheld.

Signature: _____   Date: _____

Name (Print): _____ , _____
            Last                First

Social Security Number: _____

Driver's License Number: _____

Current Address: _____

            City            State            Zip

FTC-PLS-S2-0009428

**Einikis Attachment A**
**Page 38 of 44**

PX 21, Page 51

Bank list

FTC-PL S-S2-0009996

**Einikis Attachment A**
**Page 39 of 44**

VISA  800-847-2911

| BANK | PHONE # | SPECIAL NOTES | REQUIRED |
|---|---|---|---|
| 1ST MUTUAL OF OMAHA | 800-444-9375 | | |
| 1ST NAT'L OF OMAHA | 888-530-3626 | | |
| 5TH THIRD | 800-972-3030 | | |
| A&E | 800-223-2370 | | SS# |
| A&A | 800-4727708 | | |
| AAA | 800-807-3068 | | |
| AARP | 800-283-1212 | | |
| ACHON | 800-321-1355 | | SS# |
| ADVANT | 800-705-7255 | 5584 | SS# |
| AMERICAN EXPRESS | 800-576-8542 | | |
| AMERICAN EXPRESS | 800-528-4800 | 3792 | SS# |
| AMERICAN EXPRESS | 800-459-6790 | | |
| AMERICAN EXPRESS | 800-297-1234 | | |
| AMERICAN EXPRESS | 800-962-7227 | | SS# |
| AMERICAN EXPRESS | 800-528-4800 | | |
| AMERIQUEST | 866-864-3423 | | |
| AMSOUTH | 800-267-6884 | | |
| APPLIED BANK | 484-840-2705 | | |
| ASMRT | 800-348-8783 | 4564, 4791 | |
| ASPIRE | 800-348-8783 | | |
| AT&T (CITYCARD) | 800-423-4343 | 5451, 5398 | SS# |
| AT&T UNIVERSAL | 800-423-4343 | | |
| BANCO POPULAR | 800-377-0800 | | |
| BANK OF AMERICA | 800-732-9194 | | ZIP CODE |
| BANK OF AMERICA | 800-247-3409 | 488, 4315, 4036, 4427, 5329, 5490, 4313, 4264 | ZIP CODE |
| BANK OF AMERICA | 800-718-6135 | | |
| BANK of AMERICA | 800-537-3777 | | |
| BANK of AMERICA | 800-432-1000 | | |
| BANK of AMERICA | 800-732-9194 | | |
| BANK OF AMERICA (AAA) | 800-537-3777 | 4513 | ZIP CODE |
| BANK ONE | 800-436-7927 | | |
| BB&T | 800-876-4228 | | |
| CABELLAS | 800-850-8402 | | |
| CAPITAL ONE | 800-903-3637 | 5523-529, 4321, 4802, 4388, 4305 | ZIP CODE |
| CAPITAL ONE | 800-889-9939 | 4982, 5291, 4115, 5178, 4791 | ZIP CODE |
| CAPITOL ONE | 800-555-7070 | | |
| CAPITOL ONE | 800-903-3637 | | |
| CARE CREDIT | 866-893-7864 | | |
| CHASE | 800-545-2000 | 4246, 5349, 5769, 5582, 4211, 4368, 4226, 4417, 4147, 4266, 5456, 4444 | ZIP CODE |
| CHASE | 800-645-2000 | | |
| CHASE | 800-955-9000 | | |
| CHASE | 800-356-5555 | | |
| CHASE | 800-633-0458 | | |
| CITI | 800-950-5114 | 5424, 5414, 4339, 4426, 4311 | SS# |
| CITI (BUSINESS) | 800-750-7453 | | SS# |
| CITI BANK | 800-950-5114 | | |
| CITI NEW CARD APPL | 888-201-4523 | | 9 SS# |
| COMMERCE | 800-645-2103 | | 5 SS# |
| DINERS CLUB | 800-234-6377 | | |
| DIRECT MERCHANTS | 800-379-7999 | 5456, 5462 | 3 SS# |
| DIRECT MERCHANTS | 800-347-7999 | | |
| DISCOVER | 800-347-2683 | 6011 | SS# |
| DISCOVER | 800-347-7049 | 6011 | SS# |
| DISCOVER | 866-219-0214 | 6011 | SS# |
| DISCOVER | 800-347-2683 | | |
| FIA | 888-951-8478 | | |
| FIRST EQUITY | 866-756-7870 | | |
| FIRST FINANCIAL | 800-783-1732 | | |
| FIRST N/B OF OMAHA | 800-444-9375 | | |
| FIRST PREMIER | 800-987-5521 | | |
| FIRST UNION | 800-848-7265 | | |
| GE MONEY | 866-396-8254 | | |
| GE MONEY | 800-537-6854 | | |
| GENERAL MOTORS (GM) | 800-947-4400 | 5437, 5499 | ZIP CODE |
| GM | 800-947-4400 | | |

FTC PLS SO 0000007

**MC 800-622-7747**

| Name | Phone | Notes | Extra |
|---|---|---|---|
| GM | 800-847-1000 | | |
| GMAC | 800-362-6299 | | |
| HARRIS | 800-362-6295 | | |
| HOUSE HOLD FINICAL | 800-477-6000 | 5440, 5478 | |
| HOUSEHOLD | 900-477-6000 | | |
| HOUSEHOLD | 800-462-2016 | | |
| HOUSEHOLD CREDIT | 800-742-4964 | | |
| HSBC | 800-979-7999 | 4665, 5480, 5491, 5522 | ZIP CODE |
| HSBC | 800-477-6000 | AUTOMATED SYSTEM ONLY (NO REP) | ZIP CODE |
| HSBC | 800-377-3050 | 4665, 5480, 5491, 5522 | ZIP CODE |
| HSBC | 888-385-8536 | | |
| JUNIPER | 877-523-0478 | | |
| JUNIPER (BARCLEY) | 877-523-0478 | 5140 | 9 SS# |
| KEY | 800-539-2908 | | |
| KEY BANK | 800-539-2968 | | |
| LOWE'S | 800-508-2521 | | |
| MACYS | 800-267-8472 | | |
| MACYS | 800-297-8472 | | |
| MBNA | 800-441-9977 | 5490, 4264 | |
| MBNA | 800-441-9977 | | |
| MBNA | 800-789-6685 | | |
| MERRIT | 800-253-2322 | 4120 | |
| NATIONAL CITY | 800-423-3883 | | |
| NATIONAL CITY | 800-423-3883 | | |
| ORCHARD | 800-724-4964 | AUTOMATED SYSTEM ONLY (NO REP) | |
| ORCHARD | 503-977-6010 | LIVE AGENT | |
| ORCHARD | 800-724-4964 | | |
| PAY PAL+ | 856-300-6432 | | |
| PEOPLES BANK | 800-426-1114 | | |
| PNC | 800-551-0639 | | |
| PROVIDIAN | 800-356-0011 | | |
| RBC CENTURA | 888-257-6837 | | |
| RBC CENTURA | 800-747-8155 | | |
| REGENTS | 800-295-8472 | | |
| REGIONS | 800-362-6299 | | |
| SEARS | 888-786-0217 | 5121 | |
| SEARS | 800-917-7700 | 5121 | |
| SEARS | 800-669-8481 | 5121 | |
| SEARS DISCOVER | 866-215-0214 | 6052, 6053 | |
| SEARS MC | 800-669-8488 | | |
| STATE FARM | 877-553-5863 | | |
| SUNTRUST | 800-362-6299 | | |
| SUNTRUST | 800-477-5702 | | |
| TARGET | 888-755-5856 | 4252, 4357 | |
| TARGET | 800-559-2399 | 4352, 4357 | |
| TARGET | 888-755-5856 | | |
| TARGET | 800-654-2396 | | |
| TRIBUTE | 678-259-8002 | | |
| UNION PLUS | 800-477-6000 | 5467, 4788, 3450 | |
| UNION PLUS | 800-477-6000 | | |
| US BANK | 800-285-8585 | | |
| US BANK | 800-285-8585 | | |
| USAA | 800-922-9092 | | |
| WACHOVIA | 866-201-5702 | 4942 | |
| WACHOVIA | 800-241-7990 | | |
| WAL-MART | 866-611-1148 | | |
| WAL-MART (DISCOVER) | 866-611-1148 | | |
| WAMU (HSN) | 866-892-5263 | | |
| WASHINGHTON MUTUAL | 800-663-7232 | | |
| WASHINGTON MUTUAL | 866-852-5268 | | |
| WELLS FARGO | 800-642-4720 | 4465, 4147, 4671, 5490 | |
| WELLS FARGO | 800-267-9275 | | |
| WELLS FARGO BUSINESS | 800-225-5935 | | |
| WELLS FARGO FINICAL | 800-267-5215 | | |

FTC-PLS-S2-0009998

1800 wuz

Cd pitch

# ROSEMONT

Date: 7/9/14   Fronter: TON A   Closer: Charisma
Name: B
Address:
City: DOWNELS GROVE   State: Illinois Zip
Home Phone: 630   Alternate #: NA   DOB
Email: NA   SS#:
# of Cards:   Total Debt:   MMN:

#1

1700
243/867

Bank Name: G.M - M/c   17.99 %

Account #:   Exp   CVC

Bal: $ 610.84   Avail: $ 10,689.00   LP: $ 198.76.18 NP: $

Name on Card: B _____ B   Fee: $ 399.00
Charge this card: Yes / No

#2
Bank Name: _____ %

Account #: _____   Exp: ___/___  CVC: _____

Bal: $ _____ Avail: $ _____ LP: $ _____ NP: $ _____

Name on Card: _____   Fee: $ _____
Charge this card: Yes / No

#3
Bank Name: _____ %

Account #: _____   Exp: ___/___  CVC: _____

Bal: $ _____ Avail: $ _____ LP: $ _____ NP: $ _____

Name on Card: _____   Fee: $ _____
Charge this card: Yes /

No#1
Verifier: TINA   Genie #:

No answer

**Einikis Attachment A**
**Page 42 of 44**

PX 21, Page 55

Date: _____ / _____ _____     _____
Name: _____
Address: _____
City: _____ _____ DOB: _____
Home Phone: ( ___ ) _____ _____
Email: _____ SS#: _____
# of cards: _____ Total: _____ _____ MMN: _____

Bank Name: _____ _____ %
Account #: _____ _____ CVC: _____
Bal: $ _____ Avl: _____ _____ NP: $ _____
Name on card: _____ Fee: $ _____
                                   Charge this card: YES / NO

#2

Bank Name: _____ _____ %
Account #: _____ _____ CVC: _____
Bal: $ _____ Avl: _____ _____ NP: $ _____
Name on card: _____ Fee: $ _____
                                   Charge this card: YES / NO

#3

Bank Name: _____ _____ %
Account #: _____ _____ CVC: _____
Bal: $ _____ Avl: _____ _____ NP: $ _____
Name on card: _____ Fee: $ _____
                                   Charge this card: YES / NO

Total Charged: $ _____ _____ _____ _____
Comments: _____
Date Charged: _____

Date: ___ / ___ / ___        Fronter: _____        Closer: _____

Name: _____

Address: _____

City: _____   State: _____   Zip: _____   DOB: _____

Home Phone: ( ___ ) _____   Alternate Phone: ( ___ )

Email: _____   SS #: _____

# of cards: _____   Total Debt: _____   MMN: _____

**#1**

Bank Name: _____   _____ %

Account #: _____   Exp: _____ / _____   CVC: _____

Bal: $ _____   Avail: $ _____   LP: $ _____   NP: $ _____

Name on card: _____   Fee: $ _____

Charge this card:  YES / NO

**#2**

Bank Name: _____   _____ %

Account #: _____   Exp: _____ / _____   CVC: _____

Bal: $ _____   Avail: $ _____   LP: $ _____   NP: $ _____

Name on card: _____   Fee: $ _____

Charge this card:  YES / NO

**#3**

Bank Name: _____   _____ %

Account #: _____   Exp: _____ / _____   CVC: _____

Bal: $ _____   Avail: $ _____   LP: $ _____   NP: $ _____

Name on card: _____   Fee: $ _____

Charge this card:  YES / NO

Fee Charged: $ _____   Verifier: _____   FA: _____

Comments: _____

Date Charged: _____

FTC PLS S3 0010359







Feb. 23, 2014

Dear Sir,

I am returning the following package. I have no need for it. The banks have close my credit cards accounts. Please give me credit on my credit card for the $647.99 you charged me.

Thank you!

Sincerely yours,







# INVOICE

255 Premira Blvd  Suite 160, Lake Mary, FL  32746
Phone 407-374-2916 Fax 877-230-4399

INVOICE # 42746
DATE: FEBRUARY 12, 2014

TO   ROYAL HOLDINGS OF America LLC.
And Mr. Johnathon Paulino
5104 N. Orange Blossom Trail - Ste 200-A
Orlando, Fl 32810
407.446.3499

Delivery Pay Me Warehouse

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| Don C | Pay Me First Now | Cash | 02.12.2014 |

| QTY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 25 | Pay Me First Now - ToolKits | 102.00 | 2,550.00 |
| | Sales Tax Number to be provided / or to be invoiced | | |

| | |
|---|---|
| SUBTOTAL | 2,550.00 |
| SALES TAX | .00 |
| TOTAL | 2,550.00 |

*Pd on Acct $500.00    02-12-14*

Make all checks payable to AMG/PLATINUM GROUP
THANK YOU FOR YOUR BUSINESS!



## *PROPRIETARY*
## *PURCHASE AGREEMENT*

This ***PROPRIETARY PURCHASE AGREEMENT*** made this 12ᵗʰ day of February in the year 2014, by and between Amg Platinum Group LLC. – DBA PayMeFirstNow ( "Seller" ) located at 255 Primera Blvd., Suite 160, Lake Mary, Florida, 32746 and Royal Holdings of America LLC. — ( "Purchaser" ) located at 5104 N. Orange Blossom Trail - Suite 200-A, Orlando, Florida 32810 and;

> ***WHEREAS,*** Purchaser desires to purchase PayMeFirstNow –ToolKit ( Digging Out ) and Seller desires to sell to purchaser PayMeFirstNow –ToolKits.

> ***NOW THEREFORE,*** in consideration of the mutual covenants hereunder contained, and other good and valuable consideration the sufficiency of which is hereby acknowledged, it is hereby agreed by and between the parties hereto as follows;

1.  Seller shall sell and transfer to Purchaser, free and clear of all liens, encumbrances and liabilities, for the purchase price as agreed between the Seller and Purchaser and as contained in Article 2 below.

2.  Purchaser shall pay to Seller as follows:

    a.  Agreed Bulk Purchase of 500 ToolKits @ $ 86.00 Per Toolkit .... $ 43,000.00

    b.  Shipping to Purchaser customer base, see Exhibit B Attached

    c.  Product Inventory Draw Down against Purchase Order dated 02.14ᵗʰ, 2014;

        i   Minimum of 25 PayMeFirstNow – Toolkits consecutively drawn against purchase order weekly over no more than a five month week period.
        ii  Delivery only to one ship to address;

            a)  Bulk Shipment without Seller Shipping to

                Royal Holdings of America LLC
                5104 N. Orange Blossom Trail – Ste – 200-A
                Orlando, Florida 32810

        Or  b)  To Seller Customer Provided Address

Initial _JK_

1

FTC-PLS-S1-0001046

iii Notice of Orders requiring larger than a quantity of 50 Toolkits, must have an e-mail sent to don@platinumgroupworldwide.com and received no later than four business days prior to that specific weeks shipment. A confirming telephone call will also be made to Don at ▮▮▮▮▮

d.   Product and Shipping Payment;

i  Purchaser shall pay to Seller $ 2,550.00 USD in one lump sum wire transfer, or Cashiers Check for each 25 Toolkit draw downs plus an additional $ 102.00 per Toolkit if draw down exceeds the average 25 weekly Toolkits. First payment upon the signing of this proprietary purchase agreement.

ii  Payment for pending shipment/s will be received buy Seller, no later than each _____ prior to next scheduled shipment with cleared funds.

iii Payment/s if made by Wire Transfer as follows;

**PNC Bank**
**Bank Manager; Ms. Kim Sneogrove**
**407.998.8700**
**1859 W.  S.R. 434**
**Longwood, Fl. 32750**

**Payment Credit To Account of:  AMG Platinum Group LLC**

**Direct Wire Routing: 043000096         Account # :  1214717407**

e.   First draw/shipment on longer than forty eight hours after receipt of cleared funds

f.   Oversized Marketing Posters add-on option ( 3-to Set ) priced at $ 75.00 Per Set. Highly recommended to be displayed in each sales center.

g.   It is also recommended to make adjustments to the PayMeFirstNow official Web-Site, Office / Service Contacts Ph# with a www.pmfnnationalsalesxx.com ( xx replaced by a number ) domain filed and owned by Amg Platinum Group.. Adjustments will take approximately two weeks from receipt of content. This option Invoiced separately by the year.

Adjustments ......Per Each Center  ....     $ 500.00

h.   Additional Terms of Purchase:

i.   Warehousing will be Free of any Charges as long as the product draw down does not extend past the agreed five months overall.

ii.   Authorized person to place order/s _____

iii   Purchaser will be notified when it is time to renew this Proprietary Purchase Agreement. Send e-mail to: jnice1023@yahoo.com or called 407.446.3499

iv.   Purchaser is hereby notified that purchase orders require up to a three week production time.

Initial _🖊_

2

FTC-PLS-S1-0001047

3. Purchase Order – Renewals will be accepted as long as there is no default by the Purchaser during the term of the purchase order in place at the time.

4. Purchaser will be provided written notice by Seller no less than thirty days of any intended price increase due to but not limited to production costs, or material costs. Seller will honor at the then effective purchase order price any placed and accepted purchase orders within ten business days of such notice.

5. Purchaser agrees to indemnify and hold Seller harmless against any and all liabilities, directly or indirectly, from the actions and/or non-actions of its sales staff, sales centers, fulfillment company and management.

6. Seller reserves the right to make changes to the PayMeFirstNow – Toolkit Package but will notify Purchaser of any intended change no less than thirty days of the intended change.

7. This Proprietary Purchase Agreement, voids any written or oral conversations or price quotes written, presented to or discussed before the date of this Agreement.

8. This Agreement may not be amended except in writing and signed by the parties to this agreement.

9. All covenants, warranties and representations herein shall survive this Agreement.

10. This Purchase Agreement is Proprietary to ~~Amg Platinum Group~~ Royal Holdings of America LLC, and cannot be assigned, traded, sold, leased, rented, shared without the prior written and signed acceptance by Seller.

11. This Agreement shall be governed in all respects by the laws of the State of Florida, with jurisdiction in Seminole County.

12. See Short Form License Agreement Exhibit ( A ) Attached and a part of this purchase order.

**IN WITNESS WHEREOF,** and by authority duly given, the parties hereto have set their hands and seals, the date and place first above written.  Signor has had to opportunity to have his/her/it attorney review this *PROPRIETARY PURCHASE AGREEMENT.*

PURCHASER:

_____ ( SEAL )
Jennathon ( Jay ) Paulino
And Royal Holdomgs of America LLC.

WITNESS:

_____ ( SEAL )
Print Name

SELLER:

_____ ( SEAL )
Donald F. Catalano
Mgr Mem
For: Amg Platinum Group LLC.
   DBA/ Pay Me First Now

WITNESS:

_____ ( SEAL )
Print Name

Purorderjacob01292014

3

FTC-PLS-S1-0001048

**Einikis Attachment B
Page 9 of 93**

PX 21, Page 66



# EXHIBIT ( A )

## *PROPRIETARY*

## *SHORT FORM LICENSE AGREEMENT*

1.1 **The Term of this License and Sales Agreement,** which is between the parties of the Proprietary Purchase Agreement with Seller being the Licensor and Purchaser being the Licensee will have an initial term of One Year with the start date as that of the signed approval by the Licensee and shall be automatically renewed, at the option of the Licensee for two successive one ( 1 ) year periods unless or until Licensee shall give Licensor thirty ( 30 ) days written notice before the end of any such one (1) year period of its intention not to renew. Provided however, that if Licensee shall breach or default under this agreement, Licensor may terminate this Agreement at its sole option by giving fifteen (15) days written notice to Licensee. Provided, further, that this Agreement may be terminated automatically upon any of the following. This Short Form License Agreement will become a part of the original and renewal Proprietary Purchase Orders.

1.2 **License and Sales Agreement Cannot Be Assigned:** as this Agreement is considered personal to the approved licensee and has been written for this particular sole purpose. Therefore under no circumstance, can this License be assigned, used by, leased, rented, split managed, sold, pledged by/for any nature, shared in any manner, transferred by any nature to anyone associated today or in the future with Licensee. Licensor understands that Licensee will work with selected sales centers.

1.3 **Confidentially,** is considered everything discussed in private, written and developed by Licensor and Platinum as proprietary property of Licensor and Platinum in regards to but not limited to systems, and processes as well as know-how, pricing methods, information, contracts as well as technical data, software, cd's, video, DVD's, infomercials as developed by Licensor or Platinum and any intellectual property of Licensor or Platinum as developed for its clients for the direct use of Licensor or Platinum.

1.4 **Trade Secret:** The Licensee acknowledges not to disclose, copy, or use for the benefit of the Licensee or others any trade secrets of the Licensor as defined under Florida law. Uniform Trade Secrets Act enacted by the State of Florida. Florida statutes chapter 688, and Florida statutes 812.081. This License shall be construed in accordance with the laws of the State of Florida.

1.5 **Ownership of Licensor and Platinum:** will under no circumstances be claimed by or misled to anyone that Licensee has any rights of or to that of Licensor or Platinum. Licensee will have no right/s to establish bank accounts or create debt of any nature in Licensor or Platinum names or to claim any form of ownership or right to lease, sell, pledge, transfer, share dollars by any nature in regards to Licensor or Platinum.

1.6 **Trade Marks, Copy Writes and Trade Names:** are owned by Licensor and Platinum without exception. The rights of use are provided to Licensee only during the term of this License Agreement and immediately withdrawn if the Agreement enters default and/or termination. The use of Proprietary Trade Marks, Copy Written materials and Trade Names in any manner including but not limited to internet, advertising, printed materials, radio, T V must be approved by Licensor and Platinum before any use. Submit to Licensor in writing with graphics, the intended usage and Licensor will either approve or disapprove within two weeks of receipt. No response will be considered a non-approval and that Licensee should resubmit.

Initial

FTC-PLS-S1-0001049

**Einikis Attachment B
Page 10 of 93**

PX 21, Page 67

1.7   **Indemnification and Hold Harmless,** Licensee covenants that it will indemnify and hold harmless Licensor from all its actions and non-actions, fines, suits, proceedings, claims, demands, liabilities or other actions of any character or nature, arising or growing out of or otherwise connected with Licensee's use of the aforementioned license

1.8   **Notices,** required under this Agreement, shall be sent by United States Post Office - registered return receipt, or overnight courier with proof of delivery. The permanent addresses, are the addresses as set forth in the first paragraph of this Agreement. In the event of a change of address, of the place of business of either party, while this Agreement is in effect, such party shall promptly notify the other party in writing with proof of delivery and all future written notices shall be directed to the then new address.

1.9   **Force Majeure,** Licensor and Platinum shall have no liability hereunder to the other party on account of but not limited to collection of financial documentation, acceptance or non-acceptance of any application, any loss, damage or delay occasioned or caused by strikes, riots, fire, insurrection, war, the elements, failure of carriers, inability to obtain information – materials or transportation facilities, acts of God, or of the public, enemy, compliance with any law, regulation  or other governmental order, whether or not similar to the foregoing.

1.10  **No Implied Waivers,** by the failure of either party, at any time to require performance by the other party of any provision herein shall not affect in any way the full right to require such performance at any time thereafter. Nor shall the waiver by either party of a breach of any provision herein be taken or held to be a waiver of the provision itself.

1.11  **Invalidity,** of any provision, or obligation hereunder, or the contravention thereby of the law, rule or regulation of the State, or Federal Government or Agency shall not relieve either party from its obligation hereunder, nor deprive either party of the advantage of any other provision of this Agreement.


*THE REST OF THIS PAGE LEFT BLANK ON PURPOSE*


Initial

FTC-PLS-S1-0001050



## EXHIBIT ( B )

## *PROPRIETARY*

## *SHIPPING / HANDLING AGREEMENT*

**1.1 The Term of this Shipping and Handling Agreement,** which is between the parties of the Proprietary Purchase Agreement with Seller and the Purchaser. This Shipping and Handling Agreement will become a part of the original and renewal Proprietary Purchase Agreements The shipping and handling can be canceled at any time by either party however, the parties must receive a ninety ( 90 ) days written notice of the pending cancelation.

**1.2 Notice of Shipping / Handling Cancelation,** will be sent by USPS Certified Mail by the canceling party to the other party to the address first written in the Proprietary Purchase Agreement.

**1.3 Paid Product Held For Shipping,** upon cancelation by either party will require any paid inventory of the Purchaser, to be prepared by Seller, for shipping to the Purchaser. Inventory will be shipped to the Purchasers address as stated in the Proprietary Purchase Agreement as stated in Article 2 / ii a .

**1.4 Cancelation Cost and Preparation to Ship:** Labor to prepare the remaining inventory for shipment including but not limited to all shipping costs and ten percent (10%) pf the then product purchase price.

**1.5 Purchaser Instructions:**

    a)  Purchaser will e-mail daily to don@platinumgroupworldwide.com all information to properly ship the PayMeFirstNow Toolkit/s. Email address may change to David directly with new e-mail address provided.

    b)  Information will be provided on a spread sheet headed;

            **ROYAL HOLDINGS OF AMERICA**
            **Date For shipment**
            **Number of Toolkits to ship**
            **Customer Service Phone Number**

            Your Order Customer Number
            Complete Customer Name
            Complete Shipping Address
            Customer Telephone Number
            Additional information may be required

    c)  Signature by customer will be an additional charge if requested

                                  Initial

1

FTC-PI S-S1-0001051

**Einikis Attachment B**
**Page 12 of 93**

d) Shipping will be by best way – USPS – Fedex Ground etc.

e) Once a Shipping Order has been received any shipping cancelations, changes will be considered a completed shipment as the documents and shipping package will have been completed for shipment.

f) Shipping Docs will note that Toolkit is shipped by Royal Holdings of America and any return merchandise will be returned directly to Royal Holdings of America at the address as noted on the Proprietary Purchase Agreement.

g) Purchaser will re-order PayMeFirstNow – Toolkits and pay to Seller when inventory drops to five ( 5 ) Toolkits. There will be a low inventory adjustment as weekly sales increase and Purchaser will be invoiced by Seller. The inventory cannot drop below the established minimum whereby there is no inventory to ship.

h) Seller will ship on every second day or before in accordance to Purchaser shipping e-mails as received from Purchaser to Seller

**1.6 Seller Financial Responsibility,** Seller accepts no financial responsibility for but not limited to; a-shipping to a wrong address provided by Purchaser. b- shipment being refused by Purchaser customer. c- shipment being returned by Purchaser customer. d- complaints by Purchaser customer.

Royal Holdings of America LLC                    Date: February 12, 2014

Johnathon ( Jay ) Paulino

2

FTC-PLS-S1-0001052

# CD PITCH CLOSER SCRIPT
## www.paymefirstnow.com

Mr. Mrs. _____ my name is _____ . I am the account manager for card member services. First and foremost I would like to say congratulations for qualifying for the lower interest rate offer today!! My job is basically to go over the details of the program with you today, let you know exactly what you qualify for today based on on your standings and let you know exactly how much you will be saving on your accounts. Due to your excellent standings you have been approve for a 0 % interest rate on your accounts for the life of your accounts. The service that we provide for you today is a life long service so you never have to worry about your interest rate going up in the future. All we ask for you to do is continue making your payments on time like you've been doing before, because I am pretty sure you know if you are late on a payment your interest rates are subject to change. Now if you are going to be late on a payment please give us a call back at our customer service department 877-462-5815 so that way we can put you on a payment plan to make sure that your interest rate does not go up. Everything that we went over with you today you will be receiving it in the mail within the next 3-7 business days. Also included is a tool kit software. Your tool kit software will help you with all interest bearing accounts including store accounts as well as mortgages and loans. It is a self service program that way if you have a family or friend carrying a high interest rate or if you decide to get another credit card in the future it will keep you at the lowest rate possible. They will also have booklet as well as other literature that you can read for ways to manage your finances. Now the service that we provide for you today will help increase your credit score with all 3 different credit bureaus and if you're looking at financing anything in the future this will also get you the cheapest and best rates possible. Due to your excellent standings on your accounts today there is no out of pocket expense to you for our program. There is a one time enrollment fee of $____ . Now dont't be alarm because the money that you save in interest and finance will completely absorb that fee for you. So all you have to do is continue making your payments on time like you have been doing before.

FTC-PLS-S1-00017!

**Einikis Attachment B
Page 14 of 93**

PX 21, Page 71



Florida Department of Agriculture and Consumer Services
Division of Consumer Services
2005 Apalachee Pkwy
Tallahassee, Florida 32399-6500

April 10, 2013

PAYLESS SOLUTIONS INC
8803 FUTURES DR STE 10
ORLANDO, FL 32819-9076

Subject : Commercial Telephone Seller, TC3647, valid until: April 13, 2014

Enclosed is the commercial telephone seller license TC3647 issued to your business. The department does not review the content of contracts or scripts when processing applications for licensure. It is recommended you seek legal counsel to ensure these documents are in compliance with Florida statutes. Please inform the Department of any changes in the original license application, on the Department's Material Change Form. The current version of the form is available online at http://www.800helpfla.com/tmkfaq2.html.

When salespersons are hired, please remember the law requires that they be licensed or obtain interim operating authority prior to making calls on behalf of your business. You should be aware that s.501.616(4), F.S., provides it is unlawful for any commercial telephone seller or salesperson to be unlicensed and provides for civil penalties of up to $10,000 per violation in s.501.619, F.S. In addition, s.501.623(3), F.S., states that no commercial telephone seller or salesperson shall solicit without a license. A person who violates this section commits a felony of the third degree.

If you have any questions concerning this matter, please contact us at 1-800-HELP-FLA or 850-488-2221 (if calling out of state).

Cut Here



**State of Florida**
**Department of Agriculture and Consumer Services**
**Division of Consumer Services**
**2005 Apalachee Pkwy**
**Tallahassee, Florida 32399-6500**

Registration No.: **TC3647**
Issue Date:        April 10, 2013
Expiration Date:  April 13, 2014

**POST CERTIFICATE
CONSPICUOUSLY**

## Commercial Telephone Seller
## Registration Certificate

Chapter 501, Part IV, Florida Statutes

**PAYLESS SOLUTIONS INC
8803 FUTURES DR STE 10
ORLANDO, FL 32819-9076**

ADAM H. PUTNAM
COMMISSIONER OF AGRICULTURE

This is to certify that the commercial telephone seller whose name and address are shown above has paid the required fee and posted an approved security as required by sections 501.601-501.626, F.S., and is hereby granted this license as a Commercial Telephone Seller as defined in Section 501.603, F.S.

FTC-PLS-S1-0005852



Florida Department of Agriculture & Consumer Services
ADAM H. PUTNAM, Commissioner
Tallahassee, Florida

July 11, 2014

Division of Consumer Services
2005 Apalachee Pkwy
Tallahassee FL 32399-6500
1-800-HELP-FLA / Fax 850-410-3804
www.800helpfla.com

**Refer To: DTN: 2584416**

TONAWANDA W WILLIAMS
PAYLESS SOLUTIONS INC.
8803 FUTURES DR STE 10
ORLANDO, FL 32819-9076

Dear TONAWANDA W WILLIAMS:

This letter is to acknowledge receipt of the Commercial Telephone Salesperson application and registration fee. The completed application was submitted for the above named individual and associated with PAYLESS SOLUTIONS INC.

Based on the application requirements, Interim Operating Authority (IOA) has been granted pursuant to 501.607(3), F.S. and Florida Administrative Code Rule 5J-6.005 (2)(a). In no case shall that authority exceed a period of 90 days from the date of this letter.

Within 90 days, you will be notified by mail of the granting or denial of the applicant's license. Should the application be denied, this interim operating authority shall be immediately terminated and the applicant must cease and desist acting as a telemarketing salesperson.

For assistance, please call 1-800-HELP-FLA (435-7352) if calling from within Florida, 850-488-2221 if calling from outside Florida, or visit us online at www.800helpfla.com..

Sincerely,

ADAM H. PUTNAM
COMMISSIONER OF AGRICULTURE



## Outbound Fronted Script

Good (Morning/Afternoon/Evening) Is this (Customer)? _____ Very Good! This is _____ with Payless Solutions and I'm in the Pre-approval Department.

The reason I am calling you (Customer) is that you may have heard that the Fed has lowered the interest rates and now you are eligible to lower all your credit card interest rates to as low as 4.9% (Customer ). Would you like to lower your credit card interest rates (Customer)?____ EXCELLENT!

My job is to verify some information so we lower your credit card interest rates. So let's see if you qualify and we can get that done for you today! ___OK! _____ Good!.

Before we begin, may I have your first and last name please? _____

1. (Customer) How much do you owe between all of your major credit cards accounts. Just a ballpark figure? _____
2. What are your average interest rates?
3. (If Customer doesn't know – inform them that the national average is between 15%-18%, and ask them if they fall into that category. (Rates must be at least 15% For Low Interest Rate Program).
4. Do you have at least one Visa or MasterCard account that is currently in good standings, meaning that it is not closed, past due, near or over the limit? Do you have at least $1000 available credit limit between all your credit cards _____

(IF NO)  Congratulations! (Customer) We do have a program that is perfect for you- let me transfer you to one of our financial counselors and they will explain how the program works.

If they have $1,000 available- Continue.

And what is your billing zip code? _____ Now all that I need to do is verify the toll free 1-800 number for customer service, which is located on the back of your C.C. and I can hold if you need to go get it. (After getting phone number – ask if the card is Visa or Master Card (Visa begins with 4 and MasterCard begins with 5).

And what are the last 4 digits of your Social Security# _____ ?

Ok. Now I am going to place you on hold for a brief moment to verify your account is in good standings, and as long as you qualify – my floor supervisor will let you know how low your rates will go and how much money you will save- Ok? ____ Please hold.

   (Place Customer on hold and call the 800# on the back of the credit card to verify the account info and that the funds are available).

FTC-PLS-S1-0000045

(Account must have a min. of $1,000 of available credit. If customer has less than $1,000 of available credit – Pull another card–

(Customer), Your banks automated system is being updated and I cannot verify that account. Do you have a card with another bank that I can verify is in good standings?_____

(Customer) that card is too close to the credit limit to qualify you in good standing, do you have a card that's not so close to the limit so we can verify that you are in the best of standings?_____

(IF NO)  Congratulations! (Customer) We do have a program that is perfect for you- let me transfer you to one of our financial counselors and they will explain how the program works.

(IF YES – turnover to a closer) continue

Congratulations! I was able to verify your account and you came back in excellent standings.

Now, do you currently have any promotional interest rates from balance transfers?_____ And fo you pay off your accounts in full every month?____

Great and can you verify the spelling of your first and last name? And your mailing address? _____ And lastly- what is your date of birth_____?

Before transfer you over to my floor supervisor, I want you to know our cancellation policy.

(Customer)  our cancellation policy offer to our clients unconditional 7 days money back guarantee. Also our refund policy states that if we do not show you a minimum savings of at least $2500 in interest and finance charges overall, you will receive a full refund, therefore we do verify each order on tape to make sure there are no misunderstandings, okay? (Must say YES).

Our business address is _____. Our Telemarketing License number is TCXXXXXX ( Issue by Dept. of Agriculture) and my sales person license number is TPXXXXXXX ( Issue by Dept. of Agriculture).

Thank You. Now I am going to transfer you over to my floor supervisor and they will let you know based on your standings how all of this works. Again, congratulations on qualifying with your excellent standings.

FTC-PLS-S1-0000046

# Verification Script

Hello, Mr./Mrs. _____ this is _____ ; I am a supervisor for Payless Solutions. Mr./Mrs.

_____ we confirm all of our orders on tape, you don't mind do you?

Thank you for your permission to record your order. Could you please state your full mane for

the recording (Must say full name, first and last). I show that you placed your order with

_____ (sales representative); did he/she answer all of your questions? And was _____

(sales representative) polite and courteous when he/she placed your order for you today? (Must

said Yes) Great!.


Mr./Mrs. _____ our  cancellation policy offer to our clients unconditional  7 days

money back guarantee. Also our refund policy states that if we do not show you a minimum

savings of at least $2500 in interest and finance charges overall, you will receive a full

refund, therefore we do verify each order on tape to make sure there are no

misunderstandings, okay? (Must say YES).


First, we are not a bank or a lending institution. Second, our financial program will require you

to follow our instructions, which do include reviewing your credit reports and speaking with a

financial counselor to cut your interest rates in half. This process will take 30 to 60 says. I that,

what you understood? (Must say YES).


You do understand that you will not be receiving a credit card in your financial package, correct?

(Must say YES).


3

This program is provided for the one time fee of $798.00, is that what you understood? (Must say YES).

We accept Visa/Master card, check by phone ACH transfer, Wire Transfer, Western Union or money order for the one time processing fee of $798.00. Is that ok? (Must say YES).

If client chose to pay with credit card or check by phone confirm the information:

Please Verify account number beginning with _____, thank you, and the expiration date on that account_____? Lastly, turn your card over and there will be a series of numbers to the right of your signature panel, please verify the last three digits.

For payments with check verify: routing number and checking account.

All these information is correct? (Must say YES).

Now I have your shipping address as _____, is that correct? (Must say "yes"). And is that the same as you billing address? (If not, then get billing address also).

You will receive your Payless Solutions information in 7 to 14 business days.

**Our business address is 8803 Futures Dr. Suite 10 Orlando FL. 32819. Our Telemarketing License number is TCXXXXXX ( Issue by Dept. of Agriculture) and our sales person license number is TPXXXXXXX ( Issue by Dept. of Agriculture).**

Now if you have any question, please do not hesitate to call our costumer service number at (Customer Service number), did you write that down? (Must say YES). They are open 10-6pm Eastern Time.

Enjoy your savings. Thank you and have a good day. Goodbye.

4

## Verification Department

Thank you for holding this is_____in the verification department. I need to verify some basic information as well as ask you a couple of questions. Can you please hold to turn the recording on. Thank you

   **VER NUMBER  407-327-9008 CONTRACT NUM 294714**

   Once again this is_____ with the verification department and I'm now recording this conversation is that ok. Thank You

1. On a scale of 1-10 10 being the best. How would you rate your Financial Adviser today?(GREAT)
2. Were you satisfied with all the services provided for you so far?
3. Great! I have your address as, and your phone number as,(is this the best number to contact you on?)
4. You are aware of the onetime enrollment fee of_____that fee will be charge on the card ending in _____on today's date 00/00/00 ok?(client must give clear YES)
5. If you have any questions or concern please contact your Financial Adviser
   @                       Here is your confirmation number_____

I would like to say congratulations and welcome to your savings!!!!!!
Have a wonderful day Goodbye!!!!!

CS#

Destos  866 397 3260

Koreen- 888 209 6808

FTC-PLS-S1-0000049

## FRONTERS SCRIPT

*Thank you for holding this is_____with card member services,how are you today?(GREAT)*

*Your receiving the call today because you have been making your payments on time consistently and your lenders put you on file for a lower interest rate on your accounts. Now we try to get your rates as close to a 0% as possible. I just have to ask you a few questions to get you qualified today ok?(GREAT)*

*\*\*Now about how much do you owe in overall credit card debt?*
*\*\*And how many cards is that spread upon?,*
*\*\*And do you know the rate your paying?*
*If you don't is Ok...*
*Alright now we qualify you off one card and your other cards will most likely receive the lower rate automatically. Now the card we qualify you on should be in the best standings,meaning farthest from your credit limit ..*
*\*\*Which card would that be?*
*\*\*And can you verify the the expiration date so I know the card is still valid?*
*\*\*And your 16 digit membership number located on the front beginning with a (4,5,6011) so we can verify your balance and qualify you today..Thank you .now please verify your mailing zip code,we do send you paper work.*
*\*\*Please verify the 1800 number located on the back of your card?*
*Lastly verify the last 4 of your social so I know I'm speaking to the primary card holder. OK grab a pen and paper i'm going to qualify you now*

### PLEASE HOLD ON

*Congratulations MR or MRS_____we were able to get you*

FTC-PLS-S1-0000052

*qualified the fastest qualification we had all day!!!*

*Keep out your card and pen and paper I'm transferring you to your account manager who will answer any questions you have and explain the benefits of the program. OK?*

*Thank you please hold*

## TAKE IT TO THE OFFICE TO GET
### TRACK THANK YOU!!!

FTC-PLS-S1-0000053

12,896    3,300

## Rosemont deal sheets

Date 6/18/15   Fronter $   Closer Danny $

Name: ████████    DOB: ████████

Address: ████████

City: ████████   State: WI   Z███████   SSN ████████

Email Address: N/A

Home Phone ████████   Alt #: N/A

total debt $_____ CC debt $ 18K   of cc: _____

mmn morgan

Rate: 25⁴⁴ %

Account # ████████   EXP / /   cv ████

Bal: 8896.99  Avail: 1173   LP: 06/7/14 NP: 041

Name on Card: _____   Fee $

Bank # AARP

420

190

Rate: _____ ████ BP Signature

Account # ████████   EXP / /   cv ████

Bal: 9142.91  Avail: 1057   LP: 310/9/14 NP: 0

Name on Card: BP   Fee $ 149999

Verifier: BP Danny   Genie #: ████████  23048420

## Rosemont deal sheets

Date 6 / 18 / 15 Fronter ___E$___ Closer ___$/Danny$___

Name: _____ DOB: ███████

Address: ███████████████

City: ███████ State: PA Zip: ███████ SSN ███████

Email Address: ___N/A___

Home Phone: ███████ Alt #: ___N/A___

# of cards: 5 Total Debt: 7,500 MMN: Burrows

---

Bank Name: ███████ Rate: _____ %

Account # ███████ EXP ███████

Bal 860⁰⁰ Avail: 8349 LP: _____ NP: _____

Name on Card: A 828 Fee: 699·⁹⁹

Bank # _____

charge this card yes/no

---

Bank # _____

Bank Name ███████ Rate: 07/16 %

Account #: _____ EXP 05/16 cvc ███

Bal: 910·⁹⁶ Avail: 989⁰⁴ LP: 506/8 NP: 0

Name on Card: _____ Fee: 800

charge this card yes/no

---

Verifier: _____ Genie#: 23048795

5,000
SAVINGS

## Rosemont deal sheets

Date 5 / 12 / 15  Fronter Toya  Closer Tona

Name: ███████████████  DOB: ██████████ 36

Address: ███████████

City ███████ State: AL  Zip: ██████  SSN ███████████

Email Address: ███████

Home Phone ███████████  Alt #: _____

total debt $ 74  CC debt $ 24Y  of cc: 2

mmn Weiabroes

---

Rate: 18.9 %

Account # ███████████  EXP ████████ c 275

Bal: 24.334 24  Avail: 010  LP: 500  NP: 0

24,691.33

Name on Card: Same card may oth  Fee $ _____

Bank # (800) 347-2683

---

Rate: 18.9 %

Account #: ███████  EXP ██████████████

Bal: 0  Avail: 1,000 00  LP: ___  NP: 0  898.97

Name on Card: Same  Fee $ _____

---

Verifier: Tona  Genie#: 1410

Cqtp

1-888-659-0019

FTC-PLS-S1-0000035

Gmail.com

5/6/15 Not giving NEW INFO

-X-7500 X-

## DEAL SHEET

OPENER Max Franklin

CLOSER

DMP

DEAL AMOUNT 1398

DATE 11/20/13

FIRST NAME Adriana   LAST NAME Veres   M.I.

D.O.B.                 MMN Bus        LAST4

PHONE#1              PHONE#2

BILLING ADDRESS

CITY                 STATE TX      ZIP

MAILING ADDRESS

CITY                 STATE         ZIP

INTEREST RATE 13.23%  #OF CC  5cc  CC DEBT  9K+

HOW LONG WILL IT TAKE YOU TO PAYOFF DEBT?

CREDIT CARD INFO #1

BANK NAME chase      BANK PHONE

EXP 9/16  CVC     BAL 3,599  AVAIL 2405  NP 143  LP 3602

CREDIT CARD INFO #1

BANK NAME            BANK PHONE

EXP    CVC    BAL     AVAIL     NP    LP

APPROVED    CALL BACK    DECLINED    NON-QUALIFIED

1687
GENIE

VERIFICATION
OFFICER Brady  IT  11-20-13  TIME 1:55pm

citi 9AP
BA 3K 13%

FTC-PLS-S1-0000208

4,592
699

ALEX'S ROOM                                      N.L

DATE: 10/01/14     FRONTER: Wil          CLOSER: Frank

NAME:

ADDRESS:

CITY:                    STATE: NY    ZIP:          DOB         59

HOME PHONE:                    CELLPHONE:

EMAIL:    NO  Email              SS#:

# OF CARDS:    1    , TOTAL DEBT: 6,000   MMN:   Costello Coppola

BANK NAME: BOA          INTR:

ACCOUNT #:                    EXP:      /      CVC:

BAL: $ 6,720.19    AVAIL: $ 708.81   LP: $ 31      NP: $

NAME ON CARD:

                         rep.             CHARGE THIS CARD: YES / NO

BANK NAME:                    INTR:

ACCOUNT #:                    EXP:    /    CVC:

BAL: $          AVAIL: $          LP: $          NP: $

NAME ON CARD:

                                          CHARGE THIS CARD: YES / NO

BANK NAME:                    INTR:

ACCOUNT #:                    EXP:    /    CVC:

BAL: $          AVAIL: $          LP: $          NP: $

NAME ON CARD:

                                          CHARGE THIS CARD: YES / NO

FEE CHARGED: $ 699    VERIFIER:          FA:

DATE CHARGER:

                         Transaction ID 242718118
          7328   no answer

FTC-PLS-S1-0000102

ALEX'S ROOM

DATE: 10/10/14      FRONTER: Joslyn      CLOSER: Presto

NAME: _____

ADDRESS: _____

CITY: _____ STATE: missouri ZIP: _____ DOB: _____

HOME PHONE: 417-334-7985   CELLPHONE: _____ 0415

EMAIL: N/A       SS# _____

# OF CARDS: 2    TOTAL DEBT: 300    MMN: Shea

BANK NAME: Citizens    Visa    INTR: _____

ACCOUNT #: _____ EXP: _____ CV _____

BAL: $ 1,297   AVAIL: $ 13,656   LP: $ 93    NP: $ _____

NAME ON CARD: _____

CHARGE THIS CARD:  YES / NO

BANK NAME: _____ INTR: _____

ACCOUNT #: Discover-    EXP: _____ CVC: _____

BAL: $ _____  AVAIL: $ _____  LP: $ _____  NP: $ _____

NAME ON CARD: _____

CHARGE THIS CARD:  YES / NO

BANK NAME: discover    INTR: _____

ACCOUNT #: _____ CV _____

BAL: $ 194   AVAIL: $ 3403   LP: $ _____  NP: $ _____

NAME ON CARD: _____

CHARGE THIS CARD:  YES / NO

FEE CHARGED: $_____  VERIFIER: 7396    FA: _____

DATE CHARGER: 995

FTC-PLS-S1-0000103

Cop1
Not Interested
3/6/15

Live item
250?

# ROSEMONT

Date: 3 28 14   Fronter: Haven / Wayne Closer: Sean

Name:
Address:
City:         State: TX   Zip:      DOB:         /19
Home Phone:           Alternate #:
Email:              SS#:
# of Cards:   Total Debt: 6K   MMN: BOB KO

#1
Bank Name: Chase                    12    %

Account #                          Exp:

Bal: $4,714.12  Avail: $ 15,588  LP: $      NP: $ 91  4/19

Name on Card:                      e: $ 995
                                   Charge this card: Yes / No

#2
Bank Name: Visa Amazon             %

Account #:                         p:   /   CVC:

Bal: $ 1.00   Avail: $      LP: $      NP: $

Name on Card:                      Fee: $
                                   Charge this card: Yes / No

#3
Bank Name:                         %

Account #                          Exp:

Bal: $ 11K  Avail: $ 18,749 00 4 LP: $   NP: $
Chase
Name on Card: B. 1K  A (18K)       Fee: $
                                   Charge this card: Yes /

No#1
           Verifier: Daisy    Genie #: 223164606

                              136.12
                              3164.87
                              995

FTC-PLS-S1-0000367

2-5-15
Voicemail

NO Answer
5/11

Senior life support Program

Todays Date 12/10/14 _____ Date of Post Date _____

First Name ▓▓▓▓▓▓ Last Name ▓▓▓▓▓▓▓

Physical Address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

City ▓▓▓▓▓▓ tate NC Zip Code ▓▓▓▓▓

Phone ▓▓▓▓▓▓▓▓ No cell as primary #

### PAYMENT METHOD

Bank Name: First Citizen
Bank Account information:

Routing # 053100300 _____ Account # ▓▓▓▓▓▓▓▓▓▓

Credit card-(circle one)

Visa    Mastercard    American Express    Discover

card # _____ - _____ - _____

EXP Date _____ CCV _____

*Bank account*

### PRODUCT ORDER

Product: Medical alert _____ Price $34.95

Notes: _____ Necklace _____

Sales Reps: Mary K Pass

FTC-PLS-S1-0000033

**Einikis Attachment B**
**Page 31 of 93**

NQ has no debt 5-22-15

**Senior life support Program**

Todays Date 11- 6 - 2014   Date of Post Date _____

First Name ████████████   Last Name ████████████

Physical Address: ████████████████████████

City: ████████████ State NY   Zip Code ████████████

Phone: ████████████   No cell as primary #

PAYMENT METHOD

Bank Name: Key BANK
Bank Account information:

Routing # 0000022000839   Account # ████████████

Credit card-(circle one)

Visa     Mastercard     American Express     Discover

card # _____ - _____ - _____ - _____

EXP Date _____   CCV _____

PRODUCT ORDER

Product: Necklace   Price: 29.95

Notes: $50°° gift card | coupons (3,000°°)

Sales Reps: Sarah (Jess)

FTC-PLS-S1-0000150



FTC-PLS-S1-0000178

$3,000   SANFORD/LAKE MONROE *DNQ*   F4,S-92

DATE: 12/4/13   FRONTER: Khierson   CLOSER: Mike upz

CUSTOMER NAME: ▓▓▓▓▓▓▓▓

CUSTOMER ADDRESS: ▓▓▓▓▓▓▓

CITY: ▓▓▓▓▓▓   STATE: Virginia   ZIP: ▓▓▓▓   DOB: ▓▓▓▓▓▓

HOME PHONE #: ▓▓▓▓▓▓   ALTERNATE NUMBER:

EMAIL ADDRESS:   SOCIAL SECURITY #: ▓▓▓▓▓

# OF CARDS: 2   TOTAL DEBT: 8,000   MMN: Sadie

#1

BANK NAME: Discover   %: 13.99

ACCOUNT #: ▓▓▓▓▓▓   EXP. DATE: ▓▓▓   CVC #: ▓▓▓

BALANCE: 7,556.07   AVAILABLE: $ 7,343   LP: 100   NP: 150

NAME ON CARD:   FEE: $ 1,998

10,360   7,699   250 1/7   CHARGE: Y / N
10,214   7,789   209 2/12
                206 3/12   %:

#2

BANK NAME:   %:

ACCOUNT #:   EXP. DATE:   CVC #:

BALANCE:   AVAILABLE: $   LP:   NP:

NAME ON CARD:   FEE: $

Does Not Accept Blocked #'s   CHARGE: Y / N

B 10,214.20   L 300 fees
A 7,785.00   N 205.00 month pay

#3

BANK NAME:   %:

ACCOUNT #:   EXP. DATE:   CVC #:

BALANCE:   AVAILABLE: $   LP:   NP:

NAME ON CARD:   FEE: $

CHARGE: Y / N

FEE CHARGED $   VERIFIER:   FA:

COMMENTS:

DATE CHARGED:

FTC-PLS-S1-000354

α 6000 (?ISX)

CHARGED

**GLOBAL ASSIST**

**Sales Form**

DATE: 4/2/11

FIRST NAME: ██████ M. INITIAL M LAST NAME: ██████

ADDRESS: ██████

(Must be actual address, no P.O. boxes)

CITY: ██████ STATE: PA ZIP: ██████

PHONE: ██████ ALTERNATE PHONE:

LAST 4 OF SOCIAL: ██████ # OF CARDS: ██████ TOTAL CC DEBT 15K

EMAIL ADDRESS ██████

CARD 1 (CLOSED)

BANK NAME: 1 on off BALANCE: 8,041.87 AVAIL $: 6,958.00

ACCT #: ██████

LAST PAYMENT: $ 125 INT. RATE: 14.99 NEXT PAYMENT: $ 161 FEE: $ 1,495

CARD 2 (CLOSED) CLOSED.

BANK NAME: Wellsfargo BALANCE: 4927.98 AVAIL $: 72.00

ACCT #: ██████ EXP: ██████ CVC:

LAST PAYMENT: $ 150 INT. RATE: 12.99 NEXT PAYMENT: $ 116 FEE: $

DATE OF BIRTH: 9/12/39 MOTHERS MAIDEN NAME: Madell

FRONTER: Erie CLOSER: Kelly

VERIFIER: Kim Page VERIFICATION# 2256

Notes Cap-one $3000.00 Credit.

P/2 HRS

Fixed income: 2-10-15

Still uses the cards: No Reply

Doesn't use cards: 7/13

All orders will be called back with 5 minutes please allow 30 minutes for processing and conformation.



# Rosemont

Closing Date & Time: 03/23/205   Agent Name: Mouzam_____

Client First and Last Name: ▓▓▓▓▓▓
SSN: ▓▓▓                                    DL #:

MMN: Cluff                                  Date of Birth: ▓▓▓▓▓▓
Street Address: ▓▓▓▓▓▓

City: ▓▓▓▓        State:  ON                Zip code: ▓▓▓▓▓▓

Home Phone: ▓▓▓▓▓▓                          Cell Phone:

Email Address: ▓▓▓▓▓▓_____       Fax #: ( )_____

## Unsecure Credit

| Creditor Name | Account Number | Balance | Monthly Payment |
|---|---|---|---|
| CIBC Visa Card | ▓▓▓▓▓▓ | | 17489.9    400 |

Total Debt: 17489.9   Credit Score: _____ Credit Karma: _____  Password: _____

### Card to be charge

Credit Card Number: ▓▓▓▓▓▓

Exp Date: ▓▓▓▓    CVC: ▓▓▓▓_____

Notes: _____

Ver Number: _____

If Customer refuses to sign please call: (___)_____

Notary Appointment time: _____

800-465-4653  CIbc