UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | **Case No. 6:15-CV-1016-ORL-28GJK** |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | |
| Plaintiffs, | |
| vs. | **FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| ALL US MARKETING LLC, f/k/a Payless Solutions, LLC, a Florida corporation; | |
| GLOBAL MARKETING ENTERPRISES INC., f/k/a Pay Less Solutions Inc., a Florida corporation; | |
| GLOBAL ONE FINANCIAL SERVICES LLC, a Florida corporation; | |
| YOUR #1 SAVINGS LLC, a Florida corporation; | |
| OVADAA LLC, a Florida corporation; | |
| ROYAL HOLDINGS OF AMERICA LLC, a Florida corporation; | |
| GRR FINANCIAL SERVICES LLC, a Florida corporation; | |
| AUTO GUARDIAN USA, LLC, a Florida corporation; | |
| PREMIER MARKETING INTERNATIONAL, LLC, a Florida corporation; | |
| GARY RODRIGUEZ, individually and as an officer of YOUR #1 SAVINGS LLC, and also d/b/a Global Financial Services, LLC, Engineering Development Enterprise LLC, and PBMS, LLC; | |

MARBEL RODRIGUEZ, individually and as an officer of GLOBAL ONE FINANCIAL SERVICES LLC, and also d/b/a American Best Savings LLC, and Americas First Source LLC;

CARMEN WILLIAMS, individually and as an officer of OVADAA LLC;

JONATHAN PAULINO, individually and as an officer of ROYAL HOLDINGS OF AMERICA LLC;

FARIBORZ FARD, individually and as an officer of GLOBAL MARKETING ENTERPRISES INC.

SHIRIN IMANI, individually and as an officer of GLOBAL MARKETING ENTERPRISES INC. and ALL US MARKETING LLC;

ALEX SERNA, individually and as an officer of ALL US MARKETING LLC, and also d/b/a GRR FINANCIAL SERVICES LLC and AJC Global Solutions LLC;

CHRISTIAN SERNA, individually, and as a manager of GRR FINANCIAL SERVICES LLC; and

KIMBERLY M. COARSE, individually and as an officer of AUTO GUARDIAN USA, LLC, and PREMIER MARKETING INTERNATIONAL, LLC,

Defendants.

Plaintiffs, the Federal Trade Commission ("FTC"), and the State of Florida, Office of the Attorney General, Department of Legal Affairs ("State of Florida"), for their First Amended Complaint allege:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

2.      The State of Florida brings this action pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014), to obtain temporary and permanent injunctions, consumer restitution, civil penalties and other equitable relief, and reimbursement of costs and attorneys' fees for Defendants' acts or practices in violation of the TSR and FDUTPA.  The State of Florida has conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that an enforcement action serves the public interest as required by FDUPTA Section 501.207, Florida Statutes (2014).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§  45(a), 53(b), 57b, 6102(c), and 6105(b).

4.      This Court has supplemental jurisdiction over the State of Florida's claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), (c)(1) and (2), and (d),  and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c) and 6105(b).

8.      The State of Florida is the enforcing authority under FDUTPA pursuant to Florida Statutes Section 501.203(3) and is authorized to pursue this action pursuant to 15 U.S.C. § 6103(a) to enjoin violations of the TSR, and in each such case, to obtain damages, restitution, and other compensation on behalf of Florida residents.  The State of Florida is authorized to pursue this action to enjoin violations of FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate.  § 501.207, Fla. Stat.

### **DEFENDANTS**

9.      Defendant All Us Marketing LLC is a Florida corporation with its principal places of business at 1624 Premier Row, Orlando, Florida and 541 N. Palmetto, Sanford, Florida.   All Us Marketing LLC was formerly known as Payless Solutions, LLC.  All Us Marketing LLC transacts or has transacted business in this district and throughout the United States.

10.     Defendant Global Marketing Enterprises Inc. is a Florida corporation with its principal places of business at 1620 Premier Row, Orlando, Florida, 5104 N. Orange Blossom Trail, Orlando, Florida, and 541 N. Palmetto, Sanford, Florida.  Global Marketing Enterprises Inc. was formerly known as Pay Less Solutions Inc.  Global Marketing Enterprises Inc. transacts or has transacted business in this district and throughout the United States.

4

11.     Defendant Global One Financial Services LLC is a Florida corporation with its principal places of business at 7413 Omega Street, Winter Park, Florida and 312 Redwing Way, Casselberry, Florida.  Global One Financial Services LLC transacts or has transacted business in this district and throughout the United States.

12.     Defendant Your #1 Savings LLC is a Florida corporation with its principal places of business at 5104 N. Orange Blossom Trail, Orlando, Florida and 312 Redwing Way, Casselberry, Florida.  Your #1 Savings LLC transacts or has transacted business in this district and throughout the United States.

13.     Defendant Ovadaa LLC is a Florida corporation with its principal places of business at 474 Eagle Circle, Casselberry, Florida and 541 N. Palmetto, Sanford, Florida. Ovadaa LLC transacts or has transacted business in this district and throughout the United States.

14.     Defendant Royal Holdings of America LLC is a Florida corporation with its principal place of business at 5104 N. Orange Blossom Trail, Orlando, Florida.  Royal Holdings of America LLC transacts or has transacted business in this district and throughout the United States.

15.     Defendant GRR Financial Services LLC is a Florida corporation with its principal place of business at 1624 Premier Row, Orlando, Florida.  GRR Financial Services LLC transacts or has transacted business in this district and throughout the United States.

16.     Defendant Auto Guardian USA, LLC is a Florida corporation with its principal place of business at 14508 Michener Trail, Orlando, Florida.  Auto Guardian USA, LLC transacts or has transacted business in this district and throughout the United States.

17.     Premier Marketing International, LLC is a Florida corporation with its principal place of business at 14508 Michener Trail, Orlando, Florida.  Premier Marketing International, LLC transacts or has transacted business in this district and throughout the United States.

18.     Gary Rodriguez is an owner, officer, director, member, or manager of Defendant Your #1 Savings LLC.  He also does business as Global Financial Services, LLC, Engineering Development Enterprise LLC, and PBMS, LLC.  At all times material to this Complaint, acting

alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Gary Rodriguez is responsible for organizing and creating corporate defendant Your #1 Savings LLC, establishing and maintaining corporate bank accounts, procuring merchant processing accounts, and managing Defendants' call centers.  Defendant Gary Rodriguez resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19.     Marbel Rodriguez is an owner, officer, director, member, or manager of Defendant Global One Financial Services LLC.  He also does business as American Best Savings LLC and Americas First Source LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Marbel Rodriguez is responsible for organizing and creating corporate defendant Global One Financial Services LLC, establishing and maintaining corporate bank accounts, establishing and maintaining merchant processing accounts, and managing Defendants' call centers.  Defendant Marbel Rodrigeuz resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

20.     Carmen Williams is an owner, officer, director, member, or manager of Defendant Ovadaa LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Williams is responsible for organizing and creating corporate defendant Ovadaa LLC, establishing and maintaining corporate bank accounts, establishing and maintaining merchant processing accounts, and managing one of Defendants' call centers.  Defendant Williams resides in this district and, in connection with the

matters alleged herein, transacts or has transacted business in this district and throughout the United States.

21.     Jonathan Paulino is an owner, officer, director, member, or manager of Defendant Royal Holdings of America LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Paulino is responsible for organizing and creating corporate defendant Royal Holdings of America LLC and establishing and maintaining corporate bank accounts.  Defendant Paulino resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

22.     Fariborz Fard is an owner, officer, director, member, or manager of Defendant Global Marketing Enterprises Inc.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Fard is responsible for organizing and creating corporate defendant Global Marketing Enterprises Inc. as well as obtaining a telemarketing license used by Defendants.  Defendant Fard resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

23.     Shirin Imani is or was an owner, officer, director, member, or manager of Defendants Global Marketing Enterprises Inc. and All Us Marketing LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Imani is responsible for organizing and creating two of the corporate defendants as well as obtaining two telemarketing licenses used by Defendants.  Defendant Imani resides in this district and, in

connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States

24.     Alex Serna is an owner, officer, director, member, or manager of Defendant All Us Marketing LLC.  He also does business as GRR Financial Services LLC and AJC Global Solutions LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Alex Serna is the sole managing member of Defendant All Us Marketing LLC and has received over $100,000 from Defendant Global One Financial Services LLC.  Defendant Alex Serna resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

25.     Christian Serna is an owner or manager of Defendant GRR Financial Services LLC.  At all times material to this Complaint, acting alone or in concert with others, and through the interrelated entities described in Paragraphs 9 through 15, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Christian Serna is responsible for organizing and creating corporate defendant GRR Financial Services LLC, establishing and maintaining merchant processing accounts, and providing order fulfillment services.  Defendant Christian Serna resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

26.     Kimberly Coarse is an owner, officer, director, member, or manager of Defendants Auto Guardian USA, LLC and Premier Marketing International, LLC.  At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Auto Guardian USA, LLC and Premier Marketing International, LLC, including the acts and practices set forth in this Complaint.  Coarse is responsible for organizing and creating corporate defendants Auto Guardian USA, LLC and Premier Marketing International, LLC, establishing and maintaining

corporate bank accounts, and establishing and maintaining merchant processing accounts. Defendant Coarse resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

27.     Defendants All Us Marketing LLC, Global Marketing Enterprises Inc., Global One Financial Services LLC, Your #1 Savings LLC, Ovadaa LLC, Royal Holdings of America LLC, and GRR Financial Services LLC (collectively, the "Payless Solutions Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below.  The Payless Solutions Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, business functions, employees, office locations and that have commingled funds and have shared one another's marketing materials.  Because the Payless Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Gary Rodriguez, Marbel Rodriguez, Carmen Williams, Jonathan Paulino, Fariborz Fard, Shirin Imani, Alex Serna, and Christian Serna (collectively, the "Payless Solutions Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Payless Solutions Corporate Defendants that constitute the common enterprise.  The Payless Solutions Corporate Defendants and the Payless Solutions Individual Defendants are collectively referred to herein as the "Payless Solutions Defendants."

28.     Defendants Auto Guardian USA, LLC and Premier Marketing International, LLC have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below.  They have conducted the business practices described below through an interrelated network of companies that have common ownership, management, business functions, employees, office locations and that have commingled funds and have shared one another's marketing materials.  Because Auto Guardian USA, LLC and Premier Marketing International, LLC have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendant Kimberly Coarse

9

has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Auto Guardian USA, LLC and Premier Marketing International, LLC that constitute the common enterprise.  Defendants Kimberly Coarse, Auto Guardian USA, LLC and Premier Marketing International, LLC are collectively referred to herein as the "Auto Guardian Defendants."

## COMMERCE

29.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 and Florida Statutes Section 501.203(8).

## DEFENDANTS' BUSINESS PRACTICES

### *Credit Card Interest Rate Reduction Services*

30.     Since at least August 2011, the Payless Solutions Defendants have telemarketed credit card interest rate reduction services to consumers throughout the United States.  From at least March 2013 through November 2014, the Auto Guardian Defendants fulfilled customer orders, processed customer payments, and performed customer service functions on behalf of the Payless Solutions Defendants.

31.     In many instances, Defendants' telemarketing calls are initiated using a telemarketing service that delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling."  The prerecorded messages, which often state that they are from "Card Services" or a similarly generic business name, offer consumers the purported opportunity to secure substantially lower credit card interest rates and instruct consumers to press a number on their phone to be connected to a live representative.  When consumers press the number, they are connected to a live representative who works for the Payless Solutions Defendants.

32.     During telemarketing calls, the Payless Solutions Defendants often identify themselves as representatives of consumers' banks or credit card companies.  Alternatively, the Payless Solutions Defendants claim to represent "Card Services" or some other generic business name designed to mislead consumers into believing that the Payless Solutions Defendants are

affiliated with consumers' banks or credit card companies.  For example, when consumers ask whether they are speaking to a representative of their credit card company, the Payless Solutions Defendants' script instructs telemarketers to provide the following response:  "We are consumer card services; we service all 551 nationwide banks and lending institutions on their Visa, MasterCard, American Express and Discover accounts.  You were referred here by your lenders due to your excellent payment history."

33.     Defendants claim to have the ability to reduce substantially consumers' credit card interest rates.  In many instances, Defendants claim that they can obtain interest rates as low as 0% for consumers.  Defendants also often claim that their interest rate reduction services will provide substantial savings to consumers, typically at least $2500, in a short period of time, and will enable consumers to pay off their debt much faster, typically three to five times faster, without increasing their monthly payments.

34.     Defendants obtain information from consumers regarding their credit card accounts along with other personal information such as Social Security numbers.  Defendants usually charge consumers' credit cards immediately following the telemarketing calls. Defendants charge consumers a fee ranging from $300 to $3499 for their credit card interest rate reduction services.  On the call, Defendants represent that the amount of the fee will be quickly offset by savings achieved through reduced interest rates.  Defendants often attempt to hide the existence of this fee by claiming that they "make [their] money from the interest and finance charges we save you . . . so there's no out of pocket expense to you."

35.     In some instances, Defendants use consumers' personal information to apply for new credit cards on consumers' behalf, presumably with a low introductory interest rate for balance transfers.  Defendants apply for these new credit cards without consumers' knowledge or consent.  In other instances, Defendants send consumers a package of financial education materials that consumers did not request or agree to pay for, and that does nothing to help substantially reduce consumers' credit card interest rates.

36.     In most instances, Defendants fail to provide consumers with the significant reductions in credit card interest rates and minimum savings that were promised during the initial telephone calls, and they typically fail to provide any reduction in consumers' credit card interest rates, or any savings, at all.  Consequently, consumers are not able to pay their credit card debts faster than they could have without Defendants' service.

37.     During the time they worked together, the Payless Defendants provided the Auto Guardian Defendants with the names, contact information, and credit card numbers of consumers who purportedly agreed to purchase the Defendants' interest rate reduction services.  Using this information, the Auto Guardian Defendants placed recorded "verification" calls to consumers, confirming the accuracy of their personal information, and then using this information to charge consumers' credit cards, as described above in Paragraph 34.  During these calls, the Auto Guardian Defendants followed a script in which they guaranteed substantial reductions in consumers' credit card interest rates, thousands of dollars in savings, and also promised consumers that the service would enable them to pay off their debts three to five times faster. The Auto Guardian Defendants split the proceeds of these transactions with the Payless Solutions Defendants.  In some instances, after charging consumers' credit cards, the Auto Guardian Defendants initiated calls with consumers' credit card companies, verbally requesting that the companies reduce consumers' credit card interest rates.

*Unauthorized Charges*

38.     In numerous instances, Defendants use consumers' personal financial information to make unauthorized charges to consumers' credit cards of as much as $3499.  Some consumers recall discovering such charges shortly after providing Defendants with their credit card information, but not the authorization to charge their account.  In other instances, Defendants charge the credit cards of consumers with whom they have had no prior contact.  In each case, the consumers whose credit cards have been charged never agreed to purchase anything from Defendants.

12

*Abusive Telemarketing Practices*

39.     While telemarketing their credit card interest rate reduction services, the Payless Solutions Defendants, acting directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked Defendants not to call them again.  In some instances, the Payless Solutions Defendants or their telemarketers also "spoof" their calls by transmitting phony Caller Identification information so that call recipients do not know the source of the calls.

40.     In numerous instances, the Payless Solutions Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.  In numerous instances, the Payless Solutions Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

41.     In numerous instances, the Payless Solutions Defendants, acting directly or through one or more intermediaries, made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

## VIOLATIONS OF THE FTC ACT

42.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

43.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  15 U.S.C. § 45(a).

44.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

**COUNT ONE**
**Misrepresenting Material Facts Regarding Credit Card Interest Rate Reduction Services**
**(By Plaintiff FTC Against All Defendants)**

45.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit card interest rate reduction services, Defendants have represented, directly or indirectly, expressly or by implication, that:

   A.     Consumers who purchase Defendants' credit card interest rate reduction services generally will have their credit card interest rates reduced substantially;

   B.     Consumers who purchase Defendants' credit card interest rate reduction services generally will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

   C.     Consumers who purchase Defendants' credit card interest rate reduction services generally will be able to pay off their debts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

46.     In truth and in fact, the representations set forth in Paragraph 45 above were false or not substantiated at the time the representations were made.

47.     Therefore, Defendants' representations as set forth in Paragraph 45 above are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

**COUNT TWO**
**Misrepresenting Affiliation with Financial Institution**
**(By Plaintiff FTC Against Payless Solutions Defendants)**

48.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit card interest rate reduction services, the Payless Solutions Defendants have represented, directly or indirectly, expressly or by implication, that they are representatives of, or otherwise affiliated with, consumers' banks or credit card companies.

49.     In truth and in fact, the Payless Solutions Defendants are not representatives of, or otherwise affiliated with, consumers' banks or credit card companies.

50.     Therefore, the Payless Solutions Defendants' representations as set forth in Paragraph 48 above are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT THREE**
**Unauthorized Charging Practices**
**(By Plaintiff FTC Against All Defendants)**

51.     In numerous instances, Defendants have caused billing information to be submitted for payment without having obtained consumers' express informed consent.

52.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

53.     Therefore, Defendants' practices as described in Paragraph 51 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**THE TELEMARKETING SALES RULE**

54.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

55.     As amended, effective September 27, 2010, and October 27, 2010, the TSR addresses the telemarketing of debt relief services.  The amendments effective September 27, 2010, among other things, prohibit misrepresentations about material aspects of debt relief services.  The amendments effective October 27, 2010, prohibit sellers and telemarketers from charging or collecting an advance fee before renegotiating, settling, reducing, or otherwise altering consumers' debts.

56.     Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).  Defendants also are sellers or telemarketers of "debt relief service[s]," as defined by the TSR, 16 C.F.R. § 310.2(m).

57.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

58.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii).

59.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

60.     As amended, effective September 27, 2010, the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service.  16 C.F.R. § 310.3(a)(2)(x).

61.     As amended, effective October 27, 2010, the TSR prohibits sellers and telemarketers from requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

16

A. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

B. The consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

C. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (1) bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount; or (2) is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.

16 C.F.R. § 310.4(a)(5)(i).

62. The TSR prohibits sellers and telemarketers from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the consumer.  16 C.F.R. § 310.4(a)(7).

63. The TSR, as amended in 2003, established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

64. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

17

65.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

66.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

67.     The TSR requires that sellers and telemarketers transmit or cause to be transmitted the telephone number and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's seller, the name of the seller.  16 C.F.R. § 310.4(a)(8).

68.     The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

     A.     The identity of the seller;

     B.     That the purpose of the call is to sell goods or services; and

     C.     The nature of the goods or services.

16 C.F.R. § 310.4(d).

69.     As amended, effective December 1, 2008, the TSR prohibits a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message promptly discloses:

     A.     The identity of the seller;

     B.     That the purpose of the call is to sell goods or services; and

     C.     The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

18

70.     As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

71.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. §  6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT FOUR
### Misrepresentations of Debt Relief Service
### (By Both Plaintiffs Against All Defendants)

72.     In numerous instances, in connection with the telemarketing of debt relief services, Defendants have misrepresented, directly or by implication, material aspects of the debt relief services, including, but not limited to, that:

A.     Consumers who purchase Defendants' credit card interest rate reduction services generally will have their credit card interest rates reduced substantially;

B.     Consumers who purchase Defendants' credit card interest rate reduction services generally will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

19

      C.      Consumers who purchase Defendants' credit card interest rate reduction services generally will be able to pay off their debts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

73.      Defendants' acts and practices, as described in Paragraph 72 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(x).

## COUNT FIVE
### Misrepresenting Affiliation with Financial Institutions
### (By Both Plaintiffs Against Payless Solutions Defendants)

74.      In numerous instances, in the course of telemarketing debt relief services, the Payless Solutions Defendants have misrepresented, directly or by implication, that they are representatives of, or otherwise affiliated with, consumers' banks or credit card companies.

75.      The Payless Solutions Defendants' acts or practices, as described in Paragraph 74 above, are deceptive telemarketing practices that violate the TSR, 16, C.F.R. § 310.3(a)(2)(vii).

## COUNT SIX
### Charging or Receiving a Fee in Advance of Providing Debt Relief Services
### (By Both Plaintiffs Against All Defendants)

76.      In numerous instances, in the course of telemarketing debt relief services, Defendants have requested or received payment of a fee or consideration for a debt relief service before (a) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that agreement.

77.      Defendants' acts and practices, as described in Paragraph 76 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(5)(i).

**COUNT SEVEN**
**Unauthorized Billing**
**(By Both Plaintiffs Against All Defendants)**

78.     In numerous instances, in the course of telemarketing goods or services,

Defendants have caused billing information to be submitted for payment without the express

informed consent of the consumer.

79.     Defendants' acts or practices, as described in Paragraph 78 above, are abusive

telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(7).

**COUNT EIGHT**
**Violation of the National Do Not Call Registry**
**(By Both Plaintiffs Against Payless Solutions Defendants)**

80.     In numerous instances, in connection with telemarketing, the Payless Solutions

Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound

telephone call to a person's telephone number on the National Do Not Call Registry in violation

of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

**COUNT NINE**
**Failure to Honor Entity-Specific Do Not Call Requests**
**(By Both Plaintiffs Against Payless Solutions Defendants)**

81.     In numerous instances, in connection with telemarketing, the Payless Solutions

Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound

telephone call to a person who previously has stated that he or she does not wish to receive an

outbound telephone call made by or on behalf of the seller whose goods or services are being

offered, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

**COUNT TEN**
**Failure to Transmit Caller Identification**
**(By Both Plaintiffs Against Payless Solutions Defendants)**

82.     In numerous instances, in connection with telemarketing, the Payless Solutions

Defendants have failed to transmit, or cause to be transmitted, the telephone number and name of

the telemarketer or of the seller to any caller identification service in use by a recipient of a

telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(8).

## COUNT ELEVEN
### Initiation of Unlawful Prerecorded Messages
### (By Both Plaintiffs Against Payless Solutions Defendants)

83.     In numerous instances, the Payless Solutions Defendants have made, or caused

others to make, outbound telephone calls that delivered prerecorded messages to induce the

purchase of goods or services when the persons to whom these telephone calls were made had

not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to

such person.

84.     The Payless Solutions Defendants' acts and practices, as described in Paragraph

83 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R.

§ 310.4(b)(1)(v)(A).

## COUNT TWELVE
### Failure to Make Required Oral Disclosures
### (By Both Plaintiffs Against Payless Solutions Defendants)

85.     In numerous instances, in the course of telemarketing goods and services, the

Payless Solutions Defendants have made, or caused others to make, outbound telephone calls

that deliver a prerecorded message in which the telemarketer or message failed to disclose

truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

    A.     The identity of the seller;

    B.     That the purpose of the call is to sell goods or services; and

    C.     The nature of the goods or services.

86.     The Payless Solutions Defendants' acts and practices, as described in Paragraph

85 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§

310.4(b)(1)(v)(B)(ii) and (d).

## <u>VIOLATIONS OF THE FLORIDA DECEPTIVE AND<br>UNFAIR TRADE PRACTICES ACT</u>

87.     Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

### COUNT THIRTEEN
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (By Plaintiff State of Florida Against All Defendants)

88.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of interest rate reduction services, Defendants have represented, directly or indirectly, expressly or by implication, that:

   A.     Consumers who purchase Defendants' credit card interest rate reduction services will have their credit card interest rates reduced substantially;

   B.     Consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

   C.     Consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

89.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 88 above:

   A.     Consumers who purchase Defendants' credit card interest rate reduction services do not have their credit card interest rates reduced substantially;

   B.     Consumers who purchase Defendants' credit card interest rate reduction services do not save thousands of dollars in a short time as a result of lowered credit card interest rates; and

    C.      Consumers who purchase Defendants' credit card interest rate reduction

services are not able to pay off their debts much faster as a result of

lowered credit card interest rates.

90.     Defendants' representations as set forth in Paragraph 88 above are false and

misleading and likely to mislead consumers acting reasonably, and consumers within the State of

Florida and elsewhere were actually misled by Defendants' misrepresentations in violation of

Section 501.204 of the FDUTPA.

## CONSUMER INJURY

91.     Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act, the TSR and the FDUTPA.  In addition, Defendants

have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive

relief by this Court, Defendants are likely to continue to injure consumers, reap unjust

enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

92.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant

injunctive and such other relief as the Court may deem appropriate to halt and redress violations

of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable

jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and

remedy any violation of any provision of law enforced by the FTC.

93.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the

Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court

finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR,

including the rescission or reformation of contracts, and the refund of money.

94.     Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), empowers this Court to grant the State of Florida injunctive and such other relief as the Court may deem appropriate to halt violations of the TSR and to redress injury to consumers, including the award of damages, restitution, or other compensation.

95.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUPTA, and to grant such relief as provided under state law, including injunctive relief, restitution, civil penalties, costs and attorneys' fees, and such other relief to which the State of Florida may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b); Plaintiff State of Florida, pursuant to Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II; and the Court's own equitable powers, request that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the FDUTPA by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TSR, and the FDUTPA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.     Award the State of Florida civil penalties in an amount up to $10,000 per transaction pursuant to Florida Statutes Section 501.2075 and up to $15,000 per transaction pursuant to Florida Statutes Section 501.2077 for the willful acts and practices of Defendants in violation of the FDUTPA; and

E.     Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Dated: _____Oct. 6_____, 2015

JONATHAN E. NUECHTERLEIN
General Counsel


JAMES DAVIS
JOHN HALLERUD
Federal Trade Commission
55 West Monroe, Suite 1825
Chicago, IL 60603
(312) 960-5634
jdavis@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Dated: _____Oct 6_____, 2015

PAMELA JO BONDI
Attorney General
State of Florida


DENISE BEAMER
KRISTEN JOHNSON
Assistant Attorneys General
Florida Bar # 69369 (Beamer) and #89096 (Johnson)
Email: Denise.Beamer@myfloridalegal.com
Office of the Attorney General
Consumer Protection Division
135 W. Central Blvd., Suite 670
Orlando, Florida 32801
Telephone: (407) 316-4840
Facsimile: (407) 245-0365

Attorneys for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

26